In re Estate of Lela B. Odineal, deceased. John Thomas, Personal Representative, and Patrick J. Birmingham, his attorney, appellants, v. Odineal Hill et al., appellees.

368 N.W.2d 800

Filed June 7, 1985.   No. 84-245.

Patrick J. Birmingham, for appellants.

Thomas H. DeLay of Mueting, DeLay & Stoffer, for appellees Hengstler.

Dennis W. Collins of Jewell, Gatz & Collins, for appellee Odineal Hill.

KRIVOSHA, C.J., WHITE, and HASTINGS, JJ., and CHEUVRONT, D.J., and COLWELL, D.J., Retired.

COLWELL, D.J., Retired.

John Thomas, the nominated personal representative in a will filed by him in the estate of Lela B. Odineal, deceased, Knox County, Nebraska, and his attorney, Patrick J. Birmingham, appeal a court order allowing and denying fees and expenses, and for them to make restitution. Their appeal to the district court was affirmed as modified. We affirm.

Issues not presented here are whether a nominated personal representative is either (1) included in the definition of a personal representative, Neb. Rev. Stat. § 30-2209(33) (Reissue 1979), or (2) a personal representative who can recover reasonable compensation for services, Neb. Rev. Stat. § 30-2480 (Reissue 1979). Appellants narrowed the issue to whether, under Neb. Rev. Stat. § 30-2481 (Reissue 1979), they are entitled to compensation and fees for services in defending a will not admitted to probate. Section 30-2481 provides, "If any personal representative or person nominated as personal representative defends or prosecutes any proceeding in *good faith*, whether successful or not he is entitled to receive from the estate *his necessary expenses and disbursements including reasonable attorneys' fees incurred.*" (Emphasis supplied.) Further, the comment to § 30-2481 states in part, "Litigation prosecuted by a personal representative for the primary purpose of enhancing his prospects for compensation would not be in good faith."

Section 30-2481 is authority for a personal representative or a nominated personal representative to recover from the estate the expenses and fees incurred. That person must first establish good faith, and then prove (1) that the claimed expenses and disbursements were necessary and (2) that the attorney fees were necessary and reasonable. Section 30-2481 is not authority for such person to recover compensation for his own services.

The assigned errors are consolidated as follows: (1) Did Thomas defend the will in good faith? (2) Contrary to

§ 30-2481, the court arbitrarily assigned as factors (a) "success" and (b) "benefits to the estate" in determining necessary expenses and reasonable attorney fees. (3) County Judge Philip Riley refused to disqualify himself, although he had done so at a prior hearing in the estate.

In cases of this nature arising on appeal under § 30-2481 and Neb. Rev. Stat. § 30-2482 (Cum. Supp. 1984), the standard of review provided in Neb. Rev. Stat. § 24-541.06 (Cum. Supp. 1982) and Neb. Rev. Stat. § 25-1911 (Reissue 1979) in both the district court and in this court is for error appearing on the record. *In re Estate of Snyder*, 217 Neb. 356, 348 N.W.2d 136 (1984). It is not the province of this court to weigh or resolve conflicts in the evidence, the credibility of witnesses, or the weight to be given to their testimony. *Brennan v. Brennan*, 214 Neb. 125, 332 N.W.2d 696 (1983).

Ordinarily, in the first instance, the fixing of reasonable compensation, fees, and expenses, pursuant to §§ 30-2480, 30-2481, and 30-2482, is within the sound discretion of the county court. *In re Estate of Casselman*, 219 Neb. 653, 365 N.W.2d 805 (1985).

Lela B. Odineal, a widow, age 81 years, died testate June 30, 1982, in and a resident of Knox County, Nebraska; she was described as independent and eccentric. Her estate, valued at $800,000, was then under conservatorship.

In her later years Lela executed several wills. On September 9, 1979, she executed a will (Webster will) prepared by attorney William E. Webster, Pierce, Nebraska, naming him personal representative; this will was ultimately admitted to probate pursuant to a July 18, 1983, stipulation of all interested parties, not including Thomas. In September 1980 Lela began consulting with John Thomas, attorney, Center, Nebraska, who thereafter drafted seven wills for Lela's execution—the first October 10, 1980, and the last February 4, 1982—all naming Thomas as personal representative.

On July 1, 1982, Thomas filed a petition for the formal probate of Lela's will dated February 4, 1982 (Thomas will). From July 21, 1982, to June 30, 1983, objections to the Thomas will were made and pursued by personal representatives of competing wills and heirs at law, all represented by their own

counsel. The issues were undue influence and testamentary capacity. This matter was twice set for trial before the settlement.

On June 30, 1982, Thomas engaged the legal services of Patrick J. Birmingham, attorney, Bloomfield, Nebraska. From that time forward both Thomas and Birmingham as his attorney claim compensation for services and expenses in the defense of the Thomas will, including legal research, trial preparation, interviewing witnesses, preparing pleadings and correspondence, consultation between themselves, and attending depositions and hearings. In connection with the last item the record shows that appellants attended several court hearings and depositions wherein they were neither noticed nor had a direct interest. Thomas' explanation was they might develop some information helpful in the will contest and trial preparation.

Not part of this appeal are special administration proceedings that are relevant. On July 1, 1982, without notice and representing an emergency, Thomas had himself appointed special administrator in an informal proceeding. Neb. Rev. Stat. § 30-2457(1) (Reissue 1979). Objections were filed, and, after hearing, his special letters were revoked; the First National Bank, Omaha, Nebraska, was appointed special administrator. Thomas appealed the revocation to the district court. On June 6, 1983, Thomas made application to the county court for his compensation and expenses, $27,453.81, and for $11,726.79 as a reasonable attorney fee for Birmingham, including costs of $228.79. After objections were filed this application was dismissed by Thomas on July 18, 1983. On June 30, 1983, the district court reversed the revocation of Thomas as special administrator and special letters were reissued to Thomas on July 11, 1983. He forthwith drove to Omaha and collected the estate funds from the First National Bank; he then made the following disbursements: $30,486.81 as compensation to himself, court costs of $720, a $14 mowing bill, and $15,488 to Birmingham as attorney fees. These payments to appellants represented all their claims for fees and compensation on behalf of Thomas as proponent and as special administrator during the duration of his two appointments.

The powers and duties of a special administrator appointed informally are limited, having "the duty to *collect* and *manage* the assets of the estate, to *preserve* them, to *account* therefor and to *deliver* them to the personal representative upon his qualification . . . . The special administrator has the power of a personal representative under this code *necessary to perform his duties.*" (Emphasis supplied.) Neb. Rev. Stat. § 30-2459 (Reissue 1979).

An interested party filed a motion, § 30-2482, to review Thomas' disbursements. After hearing, a judgment was filed October 12, 1983, including these findings and orders: Thomas was allowed $1,245 attorney fees for 20¾ hours' services between June 30 and July 21, 1982, in preparing documents as proponent for the probate of the Thomas will, and $1,080 attorney fees for 18 hours' services in his revocation appeal, for a total of $2,325 attorney fees. He was allowed compensation, as personal representative, of $370 for 18½ hours' services, and expenses of $65.69. His total allowances were $2,760.60; he was ordered to repay the estate $27,725.92. Birmingham was allowed $2,640 attorney fees for 44 hours' services to Thomas as special administrator, and $100 expenses; he was ordered to repay the estate $12,748. All ordered reimbursements were due within 10 days at 9¾ percent interest. Appellants were allowed no compensation or fees for the time Thomas was acting as proponent of the Thomas will after July 21, 1982, which is the basis for this appeal. Particularly, the court found, "I further specifically find that all other time charged to the estate by Mr. Thomas was for the sole and only purpose of generating a fee, was of no value to the estate and was not necessary and did not result in any benefit to the estate." Thomas and Birmingham appealed to the district court, where the judgment was affirmed as modified to provide interest at 14 percent after October 5, 1984. They posted security and appealed to this court.

The good faith required in § 30-2481 is an ultimate fact for the court's decision upon all of the evidence. *Matter of Estate of Brady*, 308 N.W.2d 68 (Iowa 1981). There are no rules defining it; rather, it depends upon the peculiar facts and circumstances existing in each case, including the duties imposed upon him by law. All parties agree that as the nominated personal

representative in Lela's will, Thomas had a duty to file it for probate, followed by a duty to defend it. Thomas' good faith closely relates to these duties. The first duty is clear and it was performed. The extent of the duty to defend is not clear, again depending upon the facts and circumstances in each case, bearing in mind that he had a high degree of trust and responsibility as the nominee and as imposed by the Code of Professional Responsibility adopted by this court.

Appellants cite *In re Estate of Healy*, 247 Minn. 205, 76 N.W.2d 677 (1956), that interprets a statute similar to § 30-2481. "We believe that the only reasonable interpretation of 'good faith and with just cause' . . . relates . . . to the executor's honest, even though mistaken, belief in the validity of the will." *Id.* at 209, 76 N.W.2d at 680. While Thomas' testimony that he honestly believed in the validity of the Thomas will was relevant and a factor in the "good faith" issue, its weight and credibility was for the trier of fact, along with all the other evidence.

No purpose would be served to further review the evidence; however, the court made these findings. As the county court noted, Thomas' statement contained 26 single-line pages which with Birmingham's 5 pages totaled 700 hours; Thomas never collected any estate assets except from the First National Bank, which he used to pay two bills and the fees to himself and Birmingham; all hours were charged at a lawyer's rate; during the will contest, all interested parties in the Thomas and Webster wills and the heirs at law were represented by their own counsel, except some minor interests valued at $27,000; Thomas did not participate in the contest settlement; he charged an hourly rate for auto trips that could have been handled by mail; the fees in question were paid without notice and hearing; there was an overlapping of charges made by the appellants; and Thomas made a statement to Randall Hanson, attorney for the First National Bank, "You know we're in this for the attorney fee, don't you?" which he explained was a joke, but Hanson felt otherwise.

*Matter of Estate of Painter*, 671 P.2d 1331 (Colo. App. 1983), held that to collect fees under their version of Unif. Prob. Act § 3-720, 8 U.L.A. 343 (1983), the same section upon

which § 30-2481 is based, the fees must necessarily have been related to services rendered to benefit the estate, rather than to benefit the personal interest of the administrator or estate's counsel. See, also, *Matter of Estate of Estes*, 134 Ariz. App. 70, 654 P.2d 4 (1982); *Matter of Estate of Stephens*, 117 Ariz. App. 579, 574 P.2d 67 (1978).

From a careful reading of the court's judgment and the evidence, we conclude that the finding "that all other time charged to the estate by Mr. Thomas was for the sole and only purpose of generating a fee" was a finding that Thomas did not act in good faith after July 21, 1982, and that such was the basis for denying appellants the compensation, fees, and expenses here claimed. There was no error in that finding, and it is not necessary to discuss the other claimed errors under § 30-2481.

Lastly, appellants complain that Judge Riley should have recused himself upon their oral motion made at the commencement of the fee allowance hearing, for the reason that he had disqualified himself at an earlier conservatorship hearing in October 1982. Prior to denying the motion, Judge Riley explained in the record that he previously disqualified himself to avoid the appearance of bias because he was personally acquainted with both the conservator and the decedent during her lifetime; that since the will contest had been settled, there no longer existed any reason for his disqualification on any grounds.

When the cause for disqualification in the first instance has been removed, a judge may assume supervision and jurisdiction in the case. See *Flannery v. Flannery*, 203 Kan. 239, 452 P.2d 846 (1969).

> A motion to disqualify a trial judge on account of prejudice is addressed to the sound discretion of the trial court. [Citation omitted.] Generally, the ruling on a motion to disqualify a trial judge on the ground of bias and prejudice will be affirmed on appeal unless the record establishes bias and prejudice as a matter of law.

*Kennedy v. Kennedy*, 205 Neb. 363, 365, 287 N.W.2d 694, 696 (1980). See, also, Model Code of Judicial Conduct Canon 3 (1981).

Neb. Rev. Stat. § 24-315 (Reissue 1979) enumerates the

grounds for the disqualification of a judge, none of which apply here. The record fails to show either personal bias, prejudice, or an abuse of discretion.

It is noted that there was no cause shown for the untimely filing without notice of the oral disqualification motion, such being a practice that is discouraged.

There is no error in this record.

AFFIRMED.