IN RE ESTATE OF LOUISE C. WATKINS, DECEASED.
MARY ANN STALLINGS ET AL., APPELLANTS, V. RICHARD H. ROBERTS, PERSONAL REPRESENTATIVE OF THE ESTATE OF LOUISE C. WATKINS, DECEASED, APPELLEE.

501 N.W.2d 292

Filed June 11, 1993.   No. S-90-1036.

Gordon Peterson and Mark Brown, of Orton, Brown, Thomas & Peterson, for appellants.

Patrick R. McDermott for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

SHANAHAN, J.

In this appeal, the question is whether a personal representative is entitled to compensation and an attorney fee for the personal representative's lawyer in defending an action brought by devisees to surcharge and remove the personal representative, when the personal representative is surcharged but not removed from the office of personal representative.

At the time of her death on February 24, 1985, Louise C. Watkins owned property valued at approximately $100,000. On April 12, a petition for informal probate of Louise Watkins' will was filed in the county court for Perkins County, and Richard H. Roberts was appointed personal representative of the estate of Louise C. Watkins, deceased. A significant part of the Watkins estate consisted of a dryland quarter section in Perkins County. On May 22, Roberts obtained an appraisal in which a licensed appraiser concluded that the fair market value of the land at the date of Louise Watkins' death was $500 per acre, or $80,000.

Under her will, Louise Watkins extended to Amy May Watkins, Louise's daughter-in-law and surviving spouse of Louise's son, Jay Laurn Watkins, an option to purchase the quarter section anytime within 6 months after Louise's death at the land's appraised fair market value on the date of Louise's death. The will also authorized Amy May Watkins to assign the option to her children. However, Amy May Watkins neither exercised nor assigned the option; therefore, the real estate passed into Louise Watkins' residuary estate for distribution among several devisees. Louise Watkins' will also authorized her personal representative to sell any estate assets at public or private sale without the necessity of court approval for a sale.

After expiration of the option, Roberts contacted Amy May Watkins' children, Mary Ann Stallings, Bruce Watkins, Clinton Watkins, and Douglas Jay Watkins, and inquired whether any of them might be interested in purchasing the quarter section. In January 1986, Douglas Jay Watkins told Roberts that he and

the other children of Amy May Watkins would pay only $200 per acre, or $32,000, for the tract. Roberts considered the proposed price to be inadequate. When other heirs declined to purchase the quarter section and rejected the possibility of a distribution in kind concerning the land, Roberts, on February 5, began running an advertisement in the local newspaper, offering the land for sale to the general public. Subsequently, on April 18, Roberts, in light of the declining value of dry cropland in Perkins County, entered into a contract to sell the quarter section to Vern and Delores Woodmancy for $300 per acre, or $48,000.

On July 14, 1986, Mary Ann Stallings, Bruce Watkins, and Clinton Watkins filed their petition in county court, seeking to restrain Roberts from closing the Woodmancy sale. Douglas Jay Watkins and Amy May Watkins, as plaintiffs, later joined in this action. The petition was amended, alleging acts of negligence and breaches of fiduciary duty by Roberts and seeking to surcharge Roberts for any loss sustained by the estate and remove him as personal representative of the Watkins estate.

On March 12, 1987, the county court ordered that Roberts perform the contract of sale to Woodmancys. However, questions concerning surcharge of Roberts and his removal as personal representative were later disposed in a trial in which much of the evidence consisted of contradictory opinions regarding the value of the quarter section in view of the generally declining real estate values in the area. On June 25, the county court, in its "Judgment Order," concluded that on June 18, 1986, when Roberts sold the quarter section to Woodmancys, the land had a fair market value of $350 per acre, or $56,000; nevertheless, "with falling land prices, it could have been reasonable to sell the land below fair market value; however, it was not reasonable to sell below market value and not give prior notice to the interested parties." The court then concluded that Mary Ann Stallings, Bruce Watkins, and Clinton Watkins had sustained a loss of $1,500 as the result of the Woodmancy sale; surcharged Roberts $1,500, "the same representing $500.00 apiece for Bruce A. Watkins, Clinton Watkins and Mary Ann Stallings"; and ordered Roberts "to

pay said surcharge directly to" Mary Ann Stallings, Bruce Watkins, and Clinton Watkins. The court dismissed the plaintiffs' action for Roberts' removal as personal representative of the Watkins estate.

Amy May Watkins, Mary Ann Stallings, Bruce Watkins, Clinton Watkins, and Douglas Jay Watkins appealed to the district court, which on May 31, 1988, affirmed the county court's judgment concerning the surcharge and removal of Roberts as personal representative.

Amy May Watkins, Mary Ann Stallings, Bruce Watkins, Clinton Watkins, and Douglas Jay Watkins then commenced an appeal to this court and, among their claimed errors, asserted that the county court should have removed Roberts as the personal representative of the Watkins estate and should have surcharged Roberts more than $1,500. That appeal, however, was dismissed for lack of jurisdiction because the appeal was filed out of time. Consequently, the county court's judgment concerning surcharge and removal of Roberts as personal representative became final.

> The doctrine of res judicata is based on the principle that a final judgment on the merits by a court of competent jurisdiction is conclusive upon the parties in any later litigation involving the same cause of action. . . .
>
> Res judicata is founded on a policy favoring termination of an action by preclusion or prevention of subsequent litigation on the same cause.

*NC+ Hybrids v. Growers Seed Assn.*, 228 Neb. 306, 310-11, 422 N.W.2d 542, 545 (1988). Accord *Ballard v. Giltner Pub. Sch.*, 241 Neb. 970, 492 N.W.2d 855 (1992). Hence, we express no opinion concerning the correctness of the county court's judgment concerning the surcharge and retention of Roberts as personal representative; instead, we accept the county court's decision in that regard as a final determination on the issues of surcharge and removal of Roberts as personal representative.

On November 7, 1989, as part of his "Formal Petition for Complete Settlement" of the Watkins estate, Roberts requested $7,493.07 as compensation for his services in conjunction with the litigation for his surcharge and removal as personal representative. Roberts also requested $12,089.90 as fees and

costs for his attorney in the litigation. The plaintiffs who had maintained the surcharge and removal actions objected to the requested payments from estate funds on the grounds that Roberts' actions in defending the actions did not "benefit the estate" and were not in " 'good faith.' " Despite the plaintiffs' objections, the county court, after consideration of the evidence concerning compensation of the personal representative and a fee for the personal representative's attorney, allowed compensation and fees as requested. The district court affirmed the county court's judgment. Allowance of that compensation and attorney fee is the subject of the present appeal.

In the absence of an equity question, an appellate court, reviewing probate matters, examines for error appearing on the record made in the county court. See, Neb. Rev. Stat. § 25-1911 (Cum. Supp. 1992); *In re Estate of Snover*, 233 Neb. 198, 443 N.W.2d 894 (1989); *In re Guardianship and Conservatorship of Sim*, 225 Neb. 181, 403 N.W.2d 721 (1987); *In re Estate of Peterson*, 221 Neb. 792, 381 N.W.2d 109 (1986); *In re Estate of Casselman*, 219 Neb. 653, 365 N.W.2d 805 (1985). Cf., *In re Estate of Detlefs*, 227 Neb. 531, 418 N.W.2d 571 (1988) (county courts may apply equitable principles to matters within probate jurisdiction); *In re Estate of Steppuhn*, 221 Neb. 329, 377 N.W.2d 83 (1985).

> In a bench trial of a law action, a trial court's factual findings have the effect of a verdict and will not be set aside unless clearly erroneous. In reviewing a judgment awarded in a bench trial of a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence.

*Broekemeier Ford v. Clatanoff*, 240 Neb. 265, 267, 481 N.W.2d 416, 418 (1992). Accord, *Young v. Dodge Cty. Bd. of Supervisors*, 242 Neb. 1, 493 N.W.2d 160 (1992); *Ballard v. Giltner Pub. Sch., supra*. On appeal, a trial court's decision awarding or denying an attorney fee will be upheld in the absence of an abuse of discretion by the trial court. See, *Sports*

*Courts of Omaha v. Meginnis*, 242 Neb. 768, 497 N.W.2d 38 (1993); *Young v. Dodge Cty. Bd. of Supervisors, supra*; *Ritchie v. Ritchie*, 226 Neb. 623, 413 N.W.2d 635 (1987).

Furthermore, "[i]nterpreting a statute presents a question of law for judicial determination." *Sports Courts of Omaha v. Meginnis*, 242 Neb. at 770, 497 N.W.2d at 40. "Regarding a question of law, an appellate court has an obligation to reach a conclusion independent from a trial court's conclusion in a judgment under review." *Huffman v. Huffman*, 232 Neb. 742, 748, 441 N.W.2d 899, 904 (1989). Accord, *Parrish v. Omaha Pub. Power Dist.*, 242 Neb. 783, 496 N.W.2d 902 (1993); *Sports Courts of Omaha v. Meginnis, supra*.

The appellants' contentions can be summarized in a single assignment of error: The county court and district court erred in holding that a personal representative who was surcharged but not removed from office is entitled to compensation and a fee for the personal representative's attorney in defending an action for the personal representative's surcharge and removal. The appellants do not contend that the services rendered by the personal representative or his attorney were unnecessary or that the charges for these services were unreasonable. Therefore, the sole issue is whether a personal representative's negligence-based surcharge precludes compensation for the personal representative's services and a fee for the personal representative's attorney.

The appellants suggest "benefit to the estate" as a judicially fashioned criterion to determine whether a personal representative may receive compensation for services rendered. See *Matter of Estate of Flaherty*, 484 N.W.2d 515 (N.D. 1992) (a personal representative's actions must benefit an estate before the personal representative is entitled to compensation). However, we look to Nebraska statutes for the standard to determine whether a personal representative is entitled to compensation. Neb. Rev. Stat. § 30-2480 (Reissue 1989), as a part of the Nebraska Probate Code, states in part: "A personal representative is entitled to reasonable compensation for his services." Additionally, Neb. Rev. Stat. 30-2481 (Reissue 1989) provides: "If any personal representative or person nominated as personal representative defends or prosecutes any

proceeding in good faith, whether successful or not he is entitled to receive from the estate his necessary expenses and disbursements including reasonable attorneys' fees incurred." Finding no requirement of a "benefit to the estate" in Nebraska statutes concerning a personal representative's claim for compensation, we reject the criterion suggested by the appellants and use §§ 30-2480 and 30-2481 to decide the issue in this appeal.

In *In re Estate of Odineal*, 220 Neb. 168, 368 N.W.2d 800 (1985), this court, considering whether a personal representative, as an unsuccessful proponent of a will for probate, and the personal representative's attorney were entitled to compensation, stated:

> Section 30-2481 is authority for a personal representative or a nominated personal representative to recover from the estate the expenses and fees incurred. That person must first establish good faith, and then prove (1) that the claimed expenses and disbursements were necessary and (2) that the attorney fees were necessary and reasonable.

220 Neb. at 169, 368 N.W.2d at 801. The court then discussed the "good faith" requirement of § 30-2481:

> The good faith required in § 30-2481 is an ultimate fact for the court's decision upon all the evidence. *Matter of Estate of Brady*, 308 N.W.2d 68 (Iowa 1981). There are no rules defining it; rather, it depends upon the peculiar facts and circumstances existing in each case, including the duties imposed upon him by law.

220 Neb. at 172, 368 N.W.2d at 803.

In *In re Estate of Reimer*, 229 Neb. 406, 427 N.W.2d 293 (1988), this court held that a person nominated as personal representative under a decedent's will was entitled to an attorney fee incurred in a good faith attempt to probate a will, even though the nominated personal representative was not successful in being appointed as personal representative. We stated that § 30-2481 "specifically provides that whether 'successful or not,' such a nominated person is entitled to receive his necessary expenses, including a reasonable attorney fee, when he prosecutes or defends any proceeding in good faith." 229 Neb. at 408, 427 N.W.2d at 295.

In the present case, we believe the evidence supports the county court's implicit finding that Roberts acted in good faith in defending against the surcharge and removal action. "Good faith," for the purpose of § 30-2481, is honesty in fact concerning conduct or a transaction. See, *S.I.D. No. 32 v. Continental Western Corp.*, 215 Neb. 843, 343 N.W.2d 314 (1983); *Hilton v. Clements*, 137 Neb. 791, 291 N.W. 483 (1940); *In re Estate of Healy*, 247 Minn. 205, 76 N.W.2d 677 (1956). Good faith is distinguished from mere negligence or an honest mistake. See, *Blue Cross and Blue Shield v. Granger*, 461 So. 2d 1320 (Ala. 1984); *Stath et al. v. Williams et al.*, 174 Ind. App. 369, 367 N.E.2d 1120 (1977).

The record contains nothing to indicate that Roberts intentionally caused a loss to the Watkins estate or to any Watkins heir or prolonged litigation in an effort to increase the eventual compensation allowed by the county court. Instead, in an effort to keep the quarter section of farmland in the decedent's family, Roberts negotiated with the appellants regarding a sale of the land to them. Considering the evidence in the light most favorable to Roberts, we cannot say that the county court was clearly erroneous in its conclusion that Roberts acted in good faith; therefore, with Roberts' good faith having been established, see *In re Estate of Odineal, supra*, we find no abuse of discretion in the county court's judgment concerning compensation for Roberts and an attorney fee for Roberts' lawyer.

Having determined that a personal representative's negligence and surcharge do not preclude compensation for the personal representative's services and a fee for the personal representative's lawyer when the personal representative has acted in good faith, we affirm the district court's judgment which affirmed the county court's judgment. However, in view of the time that administration of the Watkins estate has been pending, we direct that the district court, in its mandate to the county court, shall order the county court to conclude administration of the estate of Louise C. Watkins, deceased, within 30 days after issuance of the district court's mandate in this cause.

AFFIRMED WITH DIRECTION.