IN THE NEBRASKA COURT OF APPEALS

# MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

IN RE WARNER FAMILY TRUST

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE WARNER FAMILY TRUST.

JOSEPH R. WARNER, APPELLANT, ANDPHILIP E. WARNER,
APPELLEE AND CROSS-APPELLANT,

V.

BARBARA J. WARNER, APPELLEE AND CROSS-APPELLEE.

Filed October 15, 2019.    No. A-18-033.

Appeal from the County Court for Sarpy County: ROBERT C. WESTER, Judge. Affirmed.

Joseph R. Warner, pro se.

Philip E. Warner, pro se.

Charles E. Dorwart and Thomas C. Dorwart, of Govier, Katskee, Suing & Maxell, P.C., L.L.O., for appellee Barbara J. Warner.

BISHOP, ARTERBURN, and WELCH, Judges.

BISHOP, Judge.

## INTRODUCTION

This dispute among Joseph R. Warner and Philip E. Warner (collectively, the brothers) and their sister, Barbara J. Warner, relates to "The Warner Family Trust" (Family Trust). The brothers appeal from the order of the county court for Sarpy County denying their motions for attorney fees and costs. We affirm.

- 1 -

BACKGROUND

In 2002, Edmund G. Warner and Josephine P. Warner executed the Family Trust to benefit themselves, their children (Joseph, Philip, and Barbara), and their grandchildren. A "Revocation of Trust" (Revocation) dated February 15, 2011, was signed by Edmund on his own behalf and on Josephine's behalf (by power of attorney). In January 2012, Edmund executed a will that established a testamentary trust for Josephine's benefit. Edmund died in February, and according to exhibit 20, the county court took jurisdiction of Edmund's estate and appointed a special administrator on May 23. In June, Pinnacle Bank of Papillion (Pinnacle Bank) initiated an interpleader action in the Sarpy County District Court, alleging that Edmund and Josephine, as trustees of the Family Trust, had opened two accounts with Pinnacle Bank and deposited certain amounts into those accounts. The bank noted that Edmund had died and that the county court for Sarpy County had found Josephine to be incapacitated. The bank stated it had received the purported Revocation of the Family Trust and it sought to deposit $307,570.97 plus accrued interest into the district court, to be discharged of all claims, and to be dismissed from the case. Josephine died in October.

In February 2013, Barbara filed to register the Family Trust in the county court along with a petition requesting a determination of (1) whether the trust was valid; (2) whether the Revocation was valid; and (3) the proper distribution of funds held by Bank of America on behalf of the trust, funds held by "USAA" Bank on behalf of the "Warner Family Administrative Trust dated October 16, 2012," and funds held in the name of the trust at the time of Edmund's death that were in custody of the district court in the interpleader action. Later in February 2013, Joseph, pro se, submitted several filings in which he alleged that the Revocation unambiguously revoked the trust and that the county court lacked jurisdiction of the matter. Despite that position, on March 7, Joseph, pro se, filed a motion asking for removal of Barbara as successor cotrustee of the Family Trust.

After a hearing before the county court in March 2013, at which the brothers were represented by the same counsel, the county court entered an order on April 29. It concluded the issue of whether the trust was valid was being litigated in the district court and the county court declined to take jurisdiction of the matter "w/o prejudice" to a future request "should the [d]istrict [c]ourt matter be resolved as dismissed." On October 22, the district court handling the interpleader action issued a summary judgment order upon advisement that all interested parties had reached an agreement. The district court found the trust had been revoked and it ordered that all funds held by the clerk of the district court were to be deposited with the county court for the estate of Josephine.

On November 1, 2013, the brothers, via the same attorney, filed a motion to dismiss the county court case regarding the Family Trust as Joseph and Barbara had agreed in "open court on October 8" that the trust had been revoked and funds in the trust were to be paid into Josephine's estate, the district court had decided the matter, and the pending county court case was thus moot. They asked for attorney fees as Barbara "served an answer" in the district court action admitting that the Revocation was valid and the trust was revoked. On December 6, a hearing took place on that motion. The entirety of the hearing as it relates to the request for attorney fees follows:

[BROTHERS' COUNSEL]: The other issue that I think we need to get to is, with regard to the trust, I filed a motion to dismiss that proceeding on the basis that it's now moot since the [d]istrict [c]ourt has entered its order.

THE COURT: I can't remember. What did -- did the [d]istrict [c]ourt --

[BROTHERS' COUNSEL]: The [d]istrict [c]ourt found that the trust had been revoked and I believe ordered the funds paid into this [c]ourt.

THE COURT: Okay. Was that by stipulation?

[BROTHERS' COUNSEL]: Yes.

THE COURT: Okay. Do you have any problem with that? I don't know that I'll -- do you want me to dismiss that action or can we just let it hang?

[BROTHERS' COUNSEL]: Well, I see no reason to keep it on the [c]ourt's records.

THE COURT: [Barbara's counsel]?

[BARBARA'S COUNSEL]: Well, for the [d]istrict [c]ourt, I just have to counter the fact that the wording that was used. It was a stipulation that the order should be entered and that the matter be dismissed, that the trust is revoked, and that the money be paid over here. That was what was done. It's not that the [district] [c]ourt made a specific finding of that. It was what we stipulated to. I don't really have any great problem with the trust being -- trust administration or registration file being opened or closed.

THE COURT: I'll take that under advisement then.

Based on the record before us, the county court never announced a decision or issued an order upon the motion to dismiss.

In March 2014, Joseph, pro se, filed a motion to compel the court to resolve his motion to remove Barbara as successor cotrustee of the Family Trust that he filed the prior year and he filed a "[c]ertificate" in support of that motion. On April 2, the county court entered an order granting Joseph's counsel leave to withdraw as Joseph's counsel. Proceedings thereafter consist of numerous filings by Joseph, pro se, and to a lesser extent, Philip, through counsel.

We note the following miscellaneous motions of Joseph, pro se: motion to recuse judge and supporting "[c]ertificate," motion to compel court to resolve prior motions to remove Barbara as successor cotrustee of the trust and to remove Barbara as trustee with supporting "[c]ertificate" (filed 2014); objection to applications (filed 2015); and an objection to closure of case and motion to alter and/or amend order and/or for alternative relief (filed 2017). The record has various motions filed by Philip, through counsel: two motions to remove and replace trustee (filed 2015) and a motion to alter or amend and motion to continue hearing (filed 2017). Some of the above-noted motions were also filed in one or both of the pending estate cases for Josephine and Edmund; hearings often included discussion involving more than one of the pending cases.

On February 2, 2017, the county court scheduled a hearing for February 10, on which day the court ordered the Family Trust case closed. Upon requests of each brother, the case was reopened in April. That month, Philip filed a motion for attorney fees and costs alleging (1) the trust was revoked in 2011, (2) the county court could not have obtained jurisdiction at the time the action was filed because the trust was subject to the jurisdiction of the district court, and (3) he had incurred substantial attorney fees and traveling costs to get to "hearing(s) which should not have

occurred." Joseph, pro se, also filed a motion for attorney fees and costs, alleging that (1) the trust was revoked in 2011, (2) Barbara served an answer in the interpleader action in which she stated that the Revocation validly revoked the trust, and (3) he had incurred attorney fees and costs in "this matter which should not have been filed." (Barbara raised a similar motion but it is not in our record.) A hearing on the parties' motions for attorney fees took place on June 12, 2017. During the hearing, Joseph informed the court of an outstanding motion for the judge's recusal; the judge stated that he was not going to recuse himself. The June 12 journal entry and order of the county court states that the motion to recuse was denied and other matters were taken under advisement.

On October 6, 2017, the county court issued an order. It said that the brothers' claim was based on Neb. Rev. Stat. § 30-3893 (Reissue 2016) and Neb. Rev. Stat. § 25-824 (Reissue 2016) and noted their argument that Barbara caused them to expend unnecessary costs, travel expenses, and attorney fees in response and defense to her claim in the county court when the issue of the validity of the trust was already pending in the district court's interpleader action. The county court also noted the brothers' assertion that it should have been obvious that the district court had primary jurisdiction prior to Barbara filing the subsequent county court petition, and thus that Barbara's filing would appear frivolous; however, the county court pointed out that it was "not quite so simple." The county court said the complaint by interpleader showed that the county court took jurisdiction of the "Edmund G. Warner estate [PR 12-67] and appointed a Special Administrator on May 23, 2012 [PR 12-129], roughly three weeks prior to the interpleader being filed." It would therefore have had jurisdiction over the validity of the trust as "Edmund was one of the Trustors and his estate would have an interest in the corpus of the trust if it was revoked," something the brothers themselves had argued in 2013. The county court stated that another reason the present action was not frivolous was that it was not identical to the interpleader action. The prayer for relief in the complaint by interpleader did not ask for a determination of the validity of the trust but simply sought a decision of what should happen with the Pinnacle Bank funds. The trust litigation in county court included "more parties and issues." The county court determined that this action was legitimate and that the brothers failed to prove that Barbara's initiation of the action was frivolous or brought to cause delay or harassment, nor did equity require awarding the brothers the requested costs and expenses. It denied the brothers' motions, and it also denied Barbara's motion for attorney fees, costs, and expenses for lack of showing damages related solely to the trust litigation.

On October 13, 2017, Joseph, pro se, filed a motion to alter and/or amend the October 6 order. He alleged that the county court "affirmatively relinquished jurisdiction" to the district court, which had to determine the validity of the Revocation to resolve the interpleader action. In reference to the brothers' motion to dismiss in this case, Joseph said the court not dismissing the action "in effect, established the idea that the action had issues outstanding from the petition and was meritorious. It was neither." He argued that the county court "ignored" many reasons for determining whether a matter is frivolous and that it did not apply § 30-3893. On October 16, Philip, through counsel, also filed a motion to alter or amend, asserting that the county court could not have jurisdiction over the trust unless a trust proceeding was filed in this court, which happened "eight months after the interpleader action was filed." After a December 11 hearing on the motions, the county court entered an order the same day in which it denied the motions. It further stated, "If there is a motion to recuse pending it is denied." (Our record does not show such a motion was

- 4 -

pending at that time; the county court had previously denied a request for recusal in its order entered on June 12, as well as in an earlier order dated July 18, 2014).

The brothers appeal.

## ASSIGNMENTS OF ERROR

The brothers claim, consolidated and restated, that (1) the county court did not have jurisdiction to take up matters while a motion to recuse was pending, (2) they did not receive proper statutory notice of the February 10, 2017, hearing, and (3) the county court erred in denying their request that Barbara pay their attorney fees.

## STANDARD OF REVIEW

A jurisdictional issue that does not involve a factual dispute presents a question of law. *Brinkman v. Brinkman*, 302 Neb. 315, 923 N.W.2d 380 (2019). On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *In re Estate of Forgey*, 298 Neb. 865, 906 N.W.2d 618 (2018).

A trial court's decision awarding or denying attorney fees will be upheld on appeal absent an abuse of discretion. *Id.*

## ANALYSIS

### PARTIES ON APPEAL AND ERRORS ARGUED BUT NOT ASSIGNED

As a preliminary matter, we must address the actions taken by the brothers to appeal the December 11, 2017, order denying their motions to alter or amend the October 6 order. Joseph, pro se, filed a timely notice of appeal on January 3, 2018. Philip, pro se, filed a notice of appeal on January 16, more than 30 days after the order being appealed was entered. Philip's untimely notice of appeal is of no consequence since once Joseph's initial notice of appeal was timely filed, all other parties are designated as appellees and have the right to cross-appeal, which need only be asserted in the appellee's brief as provided by Neb. Ct. R. App. P. § 2-109(D)(4) (rev. 2014). See Neb. Ct. R. App. P. § 2-101(C) and (E) (rev. 2015). Therefore, Philip is an appellee/cross-appellant even though his interests align with Joseph's interests on appeal. In fact, the two brothers attempted to submit a jointly filed, pro se, appellate brief. Unfortunately, while there are typed signature blocks for each brother on their jointly filed brief, only Philip signed his name to his respective signature block. Joseph did not sign the brief, and Philip had no authority as a pro se litigant to represent Joseph on appeal. See *Waite v. Carpenter*, 1 Neb. App. 321, 496 N.W.2d 1 (1992) (while individual may represent himself or herself and participate in trials and legal proceedings on his or her own behalf, nonlawyer may not represent others in legal proceedings, nor may such person practice law for others).

We must view Joseph's failure to sign the brief as Joseph defaulting in filing an appellate brief as required by Neb. Ct. R. App. P. § 2-109(D) (rev. 2014). Joseph's signing of the brothers' joint appellate reply brief does not remedy his default. Ordinarily, if an appellant fails to file a brief within the time allowed by our appellate court rules, the Supreme Court Clerk "shall mail notice to all pro se parties and all attorneys of record that appellant is in default for failure to file a brief." Neb. Ct. R. App. P. § 2-110(A) (rev. 2008). The appellant is thereafter required to file a brief within 10 days after receipt of such notice. And an "[a]ppellant's failure to file a brief in response

to the notice of default subjects the appeal to dismissal." *Id*. However, in this case, no notice of default was issued upon Joseph, which may have provided him an opportunity to correct the signature oversight. Accordingly, we decline to dismiss the appeal, and instead proceed by considering the appellate brief filed by Philip, as an appellee/cross-appellant.

As an appellee/cross-appellant, Philip was required to comply with our rules on cross-appeals, including the requirement that he designate on the cover of his brief that it is a cross-appeal, and set forth his cross-appeal in a separate division of the brief titled "Brief on Cross-Appeal." See § 2-109(D)(4). Philip's appellate brief is titled "Brief of Appellants" and it is prepared as though he is an appellant. Although in violation of our rule regarding presentation of a cross-appeal, we will consider Philip's arguments to the extent they are properly raised in his brief. See, *Knaub v. Knaub*, 245 Neb. 172, 512 N.W.2d 124 (1994); *In re Interest of Becka P. et al.*, 27 Neb. App. 489, ___ N.W.2d ___ (2019). We do so because no appellant's brief was filed by Joseph to which Philip could respond as an appellee, no notice of default was issued upon Joseph in accordance with our appellate court rules, Philip designated himself as an appellant on the cover of his brief (thereby giving notice he was seeking affirmative relief), and the form and presentation of his brief conforms with the rules applicable to an appellant's brief. See *In re Interest of Becka P. et al., supra* (appellee's appeal considered despite brief rule violation because form and presentation of assignments of error conform with rules applicable to an appellant's brief).

We note that in Philip's brief, he discusses at length why he believes the county court judge should have recused himself, but Philip did not specifically assign error to the county court's denial of any motion to recuse. He also argues, but does not specifically assign, that Barbara did not have standing to initiate this action and that the county court should have dismissed Barbara's petition. To be considered by an appellate court, an error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Mock v. Neumeister*, 296 Neb. 376, 892 N.W.2d 569 (2017). A pro se litigant will receive the same consideration as if he or she had been represented by an attorney, and, concurrently, that litigant is held to the same standards as one who is represented by counsel. *Friedman v. Friedman*, 290 Neb. 973, 863 N.W.2d 153 (2015). Thus, we will not address the merits of those arguments.

JURISDICTION OF COUNTY COURT

Philip argues that the county court did not have jurisdiction after August 15, 2014, which is when Joseph's motion to recuse the judge was filed. He suggests that the county court regained jurisdiction when it denied that motion in June 2017, and argues that the county court would have to enter an order compelling a rehearing on all matters submitted to and/or considered by the court from August 2014 to June 2017. Barbara argues in her brief, but does not cross-appeal, that the county court did not have jurisdiction of the trust after it signed its April 29, 2013, order, in which it declined to register the Family Trust and subject it to the jurisdiction of the county court. Although Barbara did not cross-appeal as to this issue, we nevertheless address Barbara's argument since the lack of subject matter jurisdiction may be raised at any time by any party or by the court sua sponte. See *Christine W. v. Trevor W.*, 303 Neb. 245, 928 N.W.2d 398 (2019).

Generally, county courts have exclusive jurisdiction over all matters related to decedents' estates under Neb. Rev. Stat. § 24-517(1) (Cum. Supp. 2018). The Nebraska Supreme Court has

held that county courts have jurisdiction over all subject matter relating to estates of decedents, including construction of wills and determination of heirs and successors of decedents, estates of protected persons, protection of minors and incapacitated persons, and trusts. See *In re Estate of Forgey, supra*. Such courts have full power to make orders, judgments, and decrees and to take all other actions necessary and proper to administer justice in the matters which come before them. *Id.*

The Nebraska Supreme Court has held, however, that the Legislature's purported grant of exclusive original jurisdiction to the county court in matters relating to decedents' estates is of suspect constitutionality insofar as it relates to matters that would involve either the chancery or common law jurisdiction of the district courts. See *Brinkman v. Brinkman*, 302 Neb. 315, 923 N.W.2d 380 (2019). This is because the district court's jurisdiction over such matters emanates from the Nebraska Constitution. *Brinkman v. Brinkman, supra*. Neb. Const. art. V, § 9 provides that district courts have both chancery and common law jurisdiction, and such other jurisdiction as the Legislature may provide. See *Brinkman v. Brinkman, supra*. The Nebraska Supreme Court has held that because a district court's general jurisdiction emanates from the Nebraska Constitution, it cannot be legislatively limited or controlled. *Brinkman v. Brinkman, supra*. Further, county courts have concurrent original jurisdiction with the district court in matters arising under the Nebraska Uniform Trust Code. See Neb. Rev. Stat. § 24-517(8) (Reissue 2016). Thus, in cases such as this one concerning issues related to a trust, the county court had concurrent original jurisdiction with the district court. See, *id.*; Neb. Const. art. V, § 9.

When the jurisdiction of the county court and district court is concurrent, the basic principles of judicial administration require that the court which first acquires jurisdiction should retain it to the exclusion of the other court. *Washington v. Conley*, 273 Neb. 908, 734 N.W.2d 306 (2007). Jurisdictional priority is not a matter of extinguishing existing jurisdiction of a court. See *Charleen J. v. Blake O.*, 289 Neb. 454, 855 N.W.2d 587 (2014) (jurisdictional priority rule is question of judicial administration, not subject matter jurisdiction or personal jurisdiction). This rule of jurisdictional priority does not apply unless there are two cases pending at the same time. *Brinkman v. Brinkman, supra*. The doctrine further does not apply if the first action terminates, is resolved, or is disposed of before the second action commences. *Id.* Additionally, two pending cases fall under this doctrine only when they involve the same whole issue. *Id.* In other words, the two actions must be materially the same, involving the substantially same subject matter and the same parties. *Id.* While jurisdictional priority is not a matter of subject matter or personal jurisdiction, courts should enforce the jurisdictional priority doctrine to promote judicial comity and avoid the confusion and delay of justice that would result if courts issued conflicting decisions in the same controversy. *Id.*

In April 2013, the county court declined to take jurisdiction of this case "w/o prejudice to a future request should the [d]istrict [c]ourt matter be resolved as dismissed." Although the county court maintained concurrent original jurisdiction over the matter, it declined to exercise jurisdiction over the trust while the interpleader action was pending in the district court. Regardless of whether the county court could have demanded jurisdictional priority, a matter we need not decide, the district court then properly exercised jurisdiction over the interpleader action. See *Barth v. Barth*, 22 Neb. App. 241, 851 N.W.2d 104 (2014) (record indicated judges from Lancaster County and Lincoln County conferred and decided Lancaster County action would be dismissed;

collaboratively, courts apparently decided not to enforce jurisdictional priority doctrine yet still satisfied judicial administration principles). See, also, *Charleen J. v. Blake O., supra* (approving *Barth v. Barth, supra*). The county court's initial decision to not register the trust and subject it to its jurisdiction at that time promoted judicial comity, efficiency, and economy. The district court effectively dismissed the interpleader action in October 2013, when it entered an order of summary judgment upon the parties' agreement that the trust was revoked and directed that all funds at issue in that matter were to be deposited with the county court clerk for Josephine's estate. No issues were left for the district court to determine.

Because the district court matter had already been resolved by the time the brothers began to file motions in the county court case starting in November 2013, there was no remaining jurisdictional priority issue. See *Brinkman v. Brinkman, supra* (jurisdictional priority inapplicable if two cases are not pending at same time). The county court could properly exercise its concurrent original jurisdiction under § 24-517(8) (trust administration proceedings) or, considering the trust was declared revoked in the interpleader action, its exclusive jurisdiction under § 24-517(1) (all matters related to decedents' estates). Therefore, we disagree with Barbara's argument that the county court did not have jurisdiction after it signed its April 2013 order. In sum, the county court's initial decision declining to exercise jurisdiction at that time did not destroy its ability to take jurisdiction later, which it could properly exercise when no issues of jurisdictional priority remained.

We now address Philip's assigned error that the county court did not have jurisdiction from August 15, 2014, when Joseph filed a motion to recuse, until June 12, 2017, when the court entered an order denying recusal. We begin our consideration of this issue by noting an order filed shortly before Joseph filed his August 2014 motion to recuse. On July 18, the county court entered an order referring to a hearing that took place on April 28 with regard to 10 different motions pending before the court. The order listed the specific pending motions, which included a motion for recusal filed by Joseph. In the July 18 order, the county court denied all motions and requested relief except for a matter not relevant here. In Joseph's subsequently filed motion on August 15, again requesting recusal of the county court judge, he asserts that at the April 28 hearing (not in our record), the county court judge failed to entertain his motion "demanding" his recusal. Joseph claimed he was not given "an opportunity to be heard in open Court" and was not allowed to offer argument on this motion. This apparently second request for the judge to recuse himself was denied in an order entered June 12, 2017. Philip contends that any matters submitted and considered by the county court from the time Joseph filed the August 2014 motion to recuse until the order was entered in June 2017, must be reheard because the county court had "no jurisdiction" during that time period.

Philip does not cite to any supporting authority for his argument that a court has "no jurisdiction" once a motion to recuse is filed. He relies on the following proposition from *In re Estate of Odineal*, 220 Neb. 168, 174, 368 N.W.2d 800, 804 (1985): "When the cause for disqualification in the first instance has been removed, a judge may assume supervision and jurisdiction in the case." The proposition pertains to the facts of *In re Estate of Odineal, supra,* in which a judge who previously disqualified himself at a prior hearing in the estate denied appellants' later oral motion for the judge's recusal on the basis that there no longer existed any reason for his disqualification on any grounds. The record before this court does not show that the

county court judge ever recused himself on any grounds in the first instance, rather, the record only shows that Joseph's motion for recusal was denied in several instances.

Further, a denial of a motion to recuse is generally not a final, appealable order in its own right, and upon appellate review, a determination that the denial of a motion to recuse was incorrect may result in the judge being disqualified from deciding subsequent orders. See *In re Interest of Michael N.*, 302 Neb. 652, 925 N.W.2d 51 (2019) (if juvenile court incorrectly denied motions to recuse, it would be disqualified from deciding subsequent detention order). In other words, there is no automatic loss of jurisdiction by the court; instead, any order entered by the court once a motion to recuse has been filed and decided, may be impacted if the judge is found on appeal to have improperly denied the motion for recusal.

As noted previously, Philip did not assign as error the county court's denials of the motions to recuse. Therefore, we do not reach the merits of any arguments made in that regard, which necessarily precludes consideration of whether the county court judge was disqualified from entering orders from August 2014 until entry of its order denying recusal in June 2017, or thereafter.

### ALLEGED INSUFFICIENT NOTICE OF FEBRUARY 2017 HEARING

Philip assigns as error and argues that he did not receive proper notice of the February 10, 2017, hearing. The order notifying the parties of the February 10 hearing was filed February 2. Joseph appeared personally at that hearing; Phillip did not appear personally but was represented by his attorney. On February 10, the county court entered an order stating, "Case is closed." After a hearing on March 31, the county court entered an order on April 10 granting the motions of Philip and Joseph "to alter or amend" and proceeded to vacate the February 10 order in which it had closed the case. Philip concedes in his brief that the issue of notice became moot because the county court subsequently vacated the February 10 order. We agree, and we therefore decline to address this alleged error further.

### ATTORNEY FEES AND COSTS

Philip contends the county court erred in denying the brothers' requests for attorney fees and costs under § 25-824 or § 30-3893.

Section 25-824(2) allows a court to award reasonable attorney fees and court costs against an attorney or party who has brought or defended a civil action that alleges a claim or defense which the court determines is frivolous or made in bad faith. See Neb. Rev. Stat. § 24-824.01 (Reissue 2016) (discretionary factors for court's consideration of whether to assess award pursuant to § 25-824(2)). The term frivolous, as used in § 25-824, connotes an improper motive or legal position so wholly without merit as to be ridiculous. See *Harrington v. Farmers Union Co-Op. Ins. Co.*, 13 Neb. App. 484, 696 N.W.2d 485 (2005). The definition of frivolous has also been held to mean without rational argument based on law and evidence to support a litigant's position in the lawsuit. *Id.* Any doubt whether a legal position is frivolous or taken in bad faith should be resolved in favor of the one whose legal position is in question. *Id.* The determination of whether a particular claim or defense is frivolous must depend upon the facts of a particular case. *Id.*

Section 30-3893 provides that in judicial proceedings involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including

reasonable attorney fees, to any party, to be paid by another party or from the trust that is the subject of the controversy.

Philip asserts that Barbara's filing of this action could not have been in good faith because she prepared an answer (apparently intended to be filed in the interpleader action, but was not filed) stating the Revocation was a "valid revocation" of the trust. He contends that the Revocation was not an ambiguous document. However, Pinnacle Bank alleged in its interpleader complaint that, as to the "purported" Revocation, "[a]t least one of the party [d]efendants claims that it is invalid" (named defendants: Josephine, Barbara, and Joseph as cotrustees of trust; and Barbara as guardian and conservator of Josephine's estate, and special administrator of Edmund's estate). Further, Barbara's trial brief to the county court, date-stamped April 15, 2013, reflects her belief at that time that the interpretation of the validity of the Revocation was necessary based on what she considered were conflicting provisions in the trust and Josephine's durable power of attorney. She also stated that she "filed the request to register the trust in an effort to move the procurement of the funds held by the five financial institutions along in order to secure the funds for the family." Notably, the Pinnacle Bank interpleader action involved only one of those financial institutions.

The evidence does not reflect that Barbara's filing of the county court action in February 2013 was done frivolously or in bad faith. The record supports that Barbara had an acceptable motive to do so as there were uncertainties about the validity of the Revocation; additionally, other financial institutions besides Pinnacle Bank were involved. The parties' subsequent agreement and the October 2013 district court's order in the interpleader action did not exist at the time Barbara filed her action in the county court. Even if Barbara believed the Revocation was valid, that issue was yet to be decided by a court, and Pinnacle Bank's interpleader action did not specifically request a determination of the Revocation's validity; Barbara's initiation of the county court action to confirm the Revocation's validity and to secure funds for the family from multiple financial institutions was not frivolous as provided under § 25-824(2). See *Shanks v. Johnson Abstract & Title*, 225 Neb. 649, 407 N.W.2d 743 (1987) (appeal that is simply without merit is not by definition frivolous).

Moreover, the county court did not find that justice and equity required an award for either brother under § 30-3893. During the June 2017 hearing on the parties' motions for attorney fees and costs, Joseph testified about the December 2013 county court hearing on the brothers' motion to dismiss, admitting that there "just weren't any issues that were pending, because the matter basically was dealt with through the [d]istrict [c]ourt by [an] agreement of the parties." Barbara testified that she understood the trust matter of this case was resolved and that it was closed. Nevertheless, she had to make repeated responses to pleadings within this case to filings by her brothers. Our transcript does not indicate that Barbara initiated any filings other than those to commence the case until she moved for attorney fees sometime in 2017.

This case appears to have continued as long as it has to some degree because of Joseph's numerous pro se filings, some of which are premised on the Family Trust still being in existence. For example, it is inexplicable why, instead of filing a motion to compel resolution of the motion to dismiss heard in December 2013 (grounded on argument of trust's revocation), the next motion filed (by Joseph) on March 24, 2014, was to compel the county court to resolve a previously filed motion to remove Barbara as successor cotrustee of the Family Trust, which he himself had already acknowledged had been revoked. Joseph filed another motion in August again requesting the

removal of Barbara as successor cotrustee of the Family Trust, but added a request to also remove her as trustee of any testamentary trust. The record reflects that there was certainly a lot of confusion on the part of the parties and the court, which is understandable given that several filings show that they were jointly filed in this case and either or both of the pending estate cases. The bill of exceptions of all hearings indicate that the county court also considered matters from the other estate cases during the same hearings that issues pertinent to this case were also being heard. Regardless, there is nothing in the record to indicate that Barbara was the initiator of unnecessary actions intended to delay closure of the trust case.

When an attorney fee is authorized, the amount of the fee is addressed to the discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of an abuse of discretion. *In re Estate of Forgey*, 298 Neb. 865, 906 N.W.2d 618 (2018). A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Id*. We cannot conclude that the county court abused its discretion by denying the brothers' motions for attorney fees and costs under these circumstances.

As a final matter, in Barbara's appellate brief, she asks for "attorney's fees for the cost of responding to this frivolous and unfounded appeal," brief for appellee at 7, and an order from this court for attorney fees based upon "the affidavit in support of fees attached" (not actually attached), which relates to her attorney's service on appeal. *Id.* at 9. Barbara's requests do not comply with Neb. Ct. R. App. P. § 2-109(F), and therefore we do not consider the request for attorney fees on appeal here.

## CONCLUSION

For the foregoing reasons, we affirm the county court's October 6, 2017, order.

AFFIRMED.