Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/26/2021 01:10 AM CST

In re Estate of Pearl R.
Giventer, deceased.
Edward F. Fogarty and J. Bruce Teichman,
appellants, v. Marlys Lebowitz
et al., appellees.

___ N.W.2d ___

Filed September 3, 2021.   No. S-20-111.

1. **Guardians and Conservators: Judgments: Appeal and Error.** Appeals of matters arising under the Nebraska Probate Code, Neb. Rev. Stat. §§ 30-2201 through 30-2902 (Reissue 2016, Cum. Supp. 2018 & Supp. 2019), are reviewed for error on the record.

2. **Decedents' Estates: Appeal and Error.** An appeal from the county court's allowance or disallowance of a claim in probate will be heard as an appeal from an action at law. In reviewing a judgment of the probate court in a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. The probate court's factual findings have the effect of a verdict and will not be set aside unless clearly erroneous.

3. **Judgments: Appeal and Error.** On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below.

4. **Statutes: Appeal and Error.** Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.

5. **Decedents' Estates: Claims: Time.** The requirements of Neb. Rev. Stat. § 30-2485 (Reissue 2016) are mandatory, and where a claim is not filed within the time provided in the statute, it is barred.

6. **Statutes.** It is not within the province of the courts to read meaning into a statute that is not there or to read anything direct and plain out of a statute.

7. **Legislature: Intent.** The intent of the Legislature is expressed by omission as well as by inclusion.
8. **Appeal and Error.** An appellee's argument that a lower court's decision should be upheld on grounds specifically rejected below constitutes a request for affirmative relief, and the appellee must cross-appeal in order for that argument to be considered.

Appeal from the County Court for Douglas County: Craig Q. McDermott, Judge. Affirmed in part, and in part reversed and remanded with directions.

Edward F. Fogarty, pro se, and J. Bruce Teichman, pro se.

Diana J. Vogt and James L. Schneider, of Sherrets, Bruno & Vogt, L.L.C., for appellees.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Papik, J.

This is an appeal from the denial of petitions to recover fees and expenses incurred by a nominated personal representative and his attorney who were unsuccessful in probating a will that was drafted by the attorney. We conclude that the county court did not err in finding in these probate proceedings that claims for fees and expenses from the estate for services performed by the attorney prior to the decedent's death were time barred. However, we conclude the county court's reasons for denying fees and expenses for services after the decedent's death were legally erroneous. Regarding the remaining requests for relief, we conclude they are not supported by a discernible legal argument. Therefore, we affirm in part and in part reverse the county court's judgment and remand the cause with directions.

## I. BACKGROUND

### 1. Parties and Overview

This appeal from probate proceedings involves the estate of Pearl R. Giventer, who was born in 1920. In 2012, she

signed a will drafted by Edward F. Fogarty, naming J. Bruce Teichman as her nominated personal representative. The 2012 will purported to revoke Pearl's preexisting pourover will and the provisions of a related revocable trust of which Pearl was the settlor and which provided for the disposition of trust assets upon her death. Shortly after Pearl died in 2013, Fogarty filed in the trust proceedings a request for fees from the trust for services he performed prior to Pearl's death. More than 3 years later, Fogarty requested predeath fees from the trust and from the estate. In addition, Fogarty and Teichman, represented by Fogarty, sought from Pearl's estate and trust fees and expenses incurred after Pearl's death, primarily in their unavailing efforts to probate the 2012 will. All told, Fogarty and Teichman sought fees and expenses of approximately $500,000. Fogarty and Teichman appeal the county court's complete denial of fees and expenses.

Appellees include Marlys Lebowitz (Marlys), who is Pearl's daughter and personal representative of her estate, and Wells Fargo Bank (Wells Fargo), the trustee of Pearl's trust. Wells Fargo waived briefing and oral argument. Also an appellee is Pearl's son, Paul Giventer, who plays a role in this case as an interested party. The record indicates that there was animosity between Fogarty and Paul. Paul has not filed a brief in this appeal.

The procedural history of this appeal from probate proceedings is complicated. In addition to the underlying probate proceedings, also relevant are guardianship and conservatorship proceedings, trust proceedings, and several appeals. An exhaustive history of all of these related proceedings would be too lengthy to repeat here. What follows are the facts salient to the legal issues before us.

## 2. Pearl's Trust and Guardianship

In 1996, Pearl established the Pearl R. Giventer Revocable Trust, naming herself as trustee. Pearl executed a pourover will to the trust in 2005. The trust, as amended in 2005 and 2008, gave Pearl the power to revoke it during her lifetime.

Under certain conditions, it provided for distribution of trust assets during Pearl's life. The trust also functioned as an estate planning tool. According to the trust's dispositive provisions, Paul and Marlys would be the primary beneficiaries of the trust assets when Pearl died.

In November 2009, Paul initiated a proceeding to have himself appointed guardian for Pearl. A temporary guardian was appointed. After negotiations during which Pearl and Paul were represented by independent counsel, they came to a settlement agreement in April 2010. Under the agreement, the trust was again amended. Pearl resigned as trustee and was succeeded by Wells Fargo. Pearl agreed not to remove Wells Fargo as trustee without Paul's consent or a court order. Pearl also agreed to limitations on her ability to alter the settlement agreement and to alter the provisions to distribute the trust assets when she died. To change these aspects, Pearl needed permission of Wells Fargo and an unrelated third party, to be selected by agreement of Wells Fargo, Paul, and Marlys or, if they could not agree, by the county court. In exchange for the 2010 settlement agreement, Paul terminated the guardianship and conservatorship proceedings. Subsequently, the amended trust was registered with the county court.

In July 2010, a second guardianship and conservatorship proceeding for Pearl was opened. Supporting documentation showed that Pearl had Alzheimer's disease and dementia and exhibited symptoms of cognitive decline and impairment. Pearl consented to the proceedings, and in December, a guardian and conservator were appointed.

### 3. Fogarty Retained and Services Limited by Court Order

On January 3, 2011, Pearl, while under guardianship, retained Fogarty and another attorney as her counsel on a noncontingent basis. The retainer agreement identified the legal services to be performed as "[guardianship and conservatorship pro-ceeding] PR10-1026, Estate, guardianship and family/financial

& conservatorship, recoupment of money (250K?)—will start appeal, defer pushing." Paul, however, filed a motion in the guardianship proceeding challenging the authority of Fogarty and his cocounsel to act as Pearl's attorneys. Pearl, represented by Fogarty and his cocounsel, opposed it.

The county court did not void Pearl's contract with Fogarty and his cocounsel, but, in an order entered on June 23, 2011, it limited the scope of their representation to those purposes outlined in Neb. Rev. Stat. § 30-2620(9) (Reissue 2008): "After appointment, the ward may retain an attorney for the sole purpose of challenging the guardianship, the terms of the guardianship, or the actions of the guardian on behalf of the ward." On behalf of Pearl, Fogarty and his cocounsel eventually appealed to the Nebraska Court of Appeals the ruling that limited the scope of their representation; they also appealed an order approving an annual accounting by Wells Fargo and authorizing payment of attorney fees and costs associated with it. The appeals were consolidated and docketed as cases Nos. A-11-806 and A-11-974.

## 4. Pearl Signs 2012 Will

While the consolidated appeals in cases Nos. A-11-806 and A-11-974 were pending, Fogarty, purporting to represent Pearl, met with Pearl's guardian to discuss a will for Pearl and other matters. The guardian relied on a February 2012 evaluation that found that Pearl lacked testamentary capacity, but Fogarty viewed the evaluation as legally insufficient. Thereafter, without the guardian's awareness or approval, Fogarty retained a psychiatrist to assess Pearl's testamentary capacity. The psychiatrist determined that Pearl suffered from mild to moderate dementia but possessed testamentary capacity.

On September 5, 2012, Pearl signed a will prepared by Fogarty. At that time, nearly all of Pearl's assets were property of the trust. The 2012 will nominated Teichman as personal representative and cotrustee, along with another individual, of the testamentary trusts it created. The 2012 will purported

to revoke Pearl's trust as amended in 2010, as well as any prior wills. As in earlier instruments, Paul and Marlys were the primary beneficiaries under the 2012 will, but unlike the earlier instruments, the 2012 will contained a penalty clause that substantially reduced Paul's and Marlys' residuary shares in the event they challenged the will.

### 5. Limitation of Services Affirmed, Pearl Dies, Will Contest Begins, Fogarty Seeks Fees From Trust, and Attempts to Revive Appeal

In April 2013, the Court of Appeals affirmed the county court's order limiting the scope of Fogarty's legal services to those listed in § 30-2620. See *In re Guardianship & Conservatorship of Giventer*, Nos. A-11-806, A-11-974, 2013 WL 2106656 (Neb. App. Apr. 9, 2013) (selected for posting to court website). Fogarty filed a motion for rehearing on Pearl's behalf.

On May 10, 2013, Pearl died.

On May 15, 2013, Paul requested a declaratory judgment action in the trust proceeding ordering that the trust assets should be distributed pursuant to the terms of the trust as amended in 2010 by his settlement agreement with Pearl.

On May 16, 2013, Fogarty, whom Teichman retained to probate the 2012 will, filed the 2012 will for probate in county court. At some point in the summer of 2013, the 2005 pourover will that devised assets to Pearl's trust was also submitted for probate by Paul.

The will contest was transferred to district court but then stayed pending the county court's determination of issues related to the 2010 trust amendments.

On June 12, 2013, Fogarty and his cocounsel filed in the trust proceedings an application for the payment of fees and costs for services incurred during Pearl's lifetime "if it be within the authority of the Pearl R. Giventer [Revocable] Trust to do so." The application included itemized statements of fees incurred before Pearl's death.

After Pearl's death, Fogarty made many filings related to her motion for rehearing under submission in the Court of Appeals in cases Nos. A-11-806 and A-11-974, in an attempt to revive the appeal in Teichman's name. None of these efforts were successful, and the Court of Appeals overruled Pearl's motion for rehearing for failure of the parties to properly revive the appeal within 1 year after Pearl's death. Fogarty sought further review, but the petition was denied.

### 6. 2014 SETTLEMENT AGREEMENT BETWEEN PAUL AND MARLYS, TRUST DETERMINED CONTROLLING, AND 2012 WILL HAS NO FORCE OR EFFECT

Marlys initially opposed the 2010 trust settlement agreement, but in 2014, Paul and Marlys reached a settlement agreement and joined in a motion for summary judgment in Paul's declaratory judgment action to have the 2010 trust settlement agreement declared valid and enforceable and to find Teichman had no standing.

In opposition, Fogarty filed a cross-motion for summary judgment on Teichman's behalf. After Fogarty was advised of the settlement reached between Paul and Marlys, Teichman designated a specific nonprofit organization as a beneficiary under the 2012 will's penalty clause, which allowed the personal representative to distribute significant assets to "Omaha synagogues and Omaha Jewish non-profit organizations" selected by him in the event that Paul and Marlys challenged the will.

On August 2, 2015, the county court entered an order granting summary judgment in favor of Paul and Marlys and denying Teichman's motion for summary judgment. It found that the 2010 trust settlement agreement was valid and enforceable and that Teichman had no standing to challenge its validity or to raise issues regarding the trust. The county court further found that the purported 2012 will did not alter the dispositive scheme of the trust as amended and that "[b]ecause the 2012 Will is of no force and effect, any beneficiaries, contingent

or otherwise, named in the 2012 Will, but not named in the Trust have no standing to raise issues regarding the administration of the trust or participate in related proceedings."

Represented by Fogarty, Teichman appealed. In case No. A-15-825, the Court of Appeals affirmed the county court order in an unpublished memorandum opinion filed on November 4, 2016. Fogarty filed unsuccessful motions for rehearing and further review on Teichman's behalf.

### 7. Requests for Fees and Expenses

On July 14, 2016, while the appeal in case No. A-15-825 was still pending, Fogarty filed in the conservatorship, trust, and probate proceedings an "Informational and Supplemental Cumulative Interim Claim of Edward F. Fogarty, Creditor" for fees and costs incurred before and after Pearl's death. Fogarty identified himself as a creditor of Pearl's "Estate and Trust" and characterized the document as a "supplement[]" to the application for fees he filed in the trust proceedings in May 2013. On August 3, 2016, the special administrator filed a response in the probate proceedings. To the extent that Fogarty's July 14 filing was a claim or notice of claim in the probate proceedings, the special administrator disallowed it, noting that Fogarty had not previously claimed fees in the probate proceeding.

On April 4, 2018, Fogarty and Teichman filed petitions for allowance of claims in the probate proceedings. Fogarty reiterated that he was entitled to fees and expenses incurred before Pearl's death, requesting fees from the trust and probate estate. Similarly, as for fees and expenses for his services to Teichman after Pearl's death, Fogarty asserted the trust and probate estate were liable. In total, Fogarty claimed he was entitled to approximately $500,000 for fees and expenses. Teichman sought postdeath fees and expenses of $8,000.

Each also asked for declaratory and equitable relief declaring meritless "*ad hominem* attacks" and "slanders" by Paul and Marlys. These "attacks" included unsuccessful motions for attorney fees by Marlys, alleging bad faith and frivolousness

by Fogarty and Teichman, and pleadings filed by Paul assert-ing that Fogarty's retainer was in bad faith and that Fogarty coerced and defrauded Pearl into signing the 2012 will.

## 8. County Court's Orders

On June 10, 2019, the county court denied fees in the probate proceeding incurred prior to Pearl's death, because Fogarty and Teichman filed their claims for those fees out of time, apparently pursuant to Neb. Rev. Stat. §§ 30-2485(a)(2) and 30-2486 (Reissue 2016). It also denied postdeath fees and expenses, articulating the test as "what is reasonable and nec-essary and beneficial to the estate." The county court reasoned that Teichman's acts, through Fogarty, in pursuing probate of the will did not benefit the estate, even if done in good faith. But the county court observed that the evidence did not sup-port a finding of bad faith or vexatious acts by Fogarty and Teichman or by Paul's and Marlys' attorneys.

On June 14, 2019, Fogarty and Teichman filed a motion for new trial or to alter and amend the judgment. They asserted that they were not required to show some benefit to the estate, but, rather, that their actions were taken in good faith consist-ent with Pearl's directions while she was living and with the 2012 will. The motion also challenged the county court's find-ing that claims for predeath fees were time barred, asserting that Neb. Rev. Stat. § 30-2482 (Reissue 2016) applied, rather than § 30-2486.

On January 17, 2020, the county court denied the motion for new trial in its entirety and entered a new order modifying its reasoning but still denying fees. The county court rejected the assertion that § 30-2482 applied to Fogarty's claim for predeath fees, noting that that section, along with Neb. Rev. Stat. § 30-2481 (Reissue 2016), applies to services on behalf of the estate and that there was no estate or personal representa-tive prior to Pearl's death and there were likewise no probate or administration expenses. Instead, it found that claims for predeath fees were associated with services Fogarty performed

for Pearl directly, rather than her estate or her nominated personal representative, and should have been filed in the probate proceeding within the 3-year limitations period set forth in § 30-2485(a)(2).

Regarding the postdeath fees and expenses, the county court modified its previous order to address whether Fogarty and Teichman's actions were "'necessary'" to the estate, rather than whether they were of some "benefit to the estate." The county court stated that it did not find Fogarty and Teichman acted in bad faith, "as the evidence was insufficient to prove the same"; that Fogarty and Teichman believed they had a duty to pursue the 2012 will; and that they believed they had carried out their duty under the 2012 will in good faith. However, the county court found that Fogarty created this supposed duty by drafting an unenforceable will in disregard of the provisions in the 2010 trust amendment that controlled Pearl's future estate planning and was later determined to be the controlling instrument. The county court observed that Fogarty "seemed to ignore" the 2010 trust amendment.

The county court further observed that § 30-2482 did not apply to postdeath fees incurred by Teichman because he was not and could not have been appointed as "personal representative" via an unenforceable will. It also deemed it significant that the probate estate did not contain any assets to satisfy claims by Fogarty and Teichman and appeared to conclude that Fogarty and Teichman could not have their claims satisfied by assets from the trust, because they did not comply with the provisions of Neb. Rev. Stat. § 30-3850 (Reissue 2016). Considering "the necessity of pursuing an unenforceable will and whether that will should have been drafted in the first place," the county court determined that Fogarty and Teichman could not recover postdeath fees and expenses.

Fogarty and Teichman have timely filed this appeal.

## II. ASSIGNMENTS OF ERROR

Fogarty and Teichman assign that the county court erred by (1) "not awarding and ordering the Trust to pay [Fogarty]

and [Teichman] fair and reasonable fees," (2) "ruling [Fogarty's] fees and expenses in service to Pearl before she died were time-barred" and failing "to order the Trust to pay these fair and reasonable fees and expenses," and (3) "not declaring all claims of Paul and Marlys[] (a) are without merit" and "(b) are res judicata and/or claim precluded against [Fogarty] and [Teichman] by them or any person in privity with them." (Emphasis omitted.)

## III. STANDARD OF REVIEW

We set forth the appropriate standards of review in the analysis portion of this opinion.

## IV. ANALYSIS

### 1. Fees Incurred Before Pearl's Death

We begin by addressing Fogarty's claim that the county court erred in not ordering that he be compensated for the fees and expenses he incurred in representing Pearl prior to her death. He disputes the county court's finding that a claim for such fees was not presented within the 3-year limitations period after Pearl's death, as set forth in § 30-2485(a) for "[a]ll claims against a decedent's estate which arose before the death of the decedent . . . ." Not only does Fogarty argue that a different subsection for claims "which arise at or after the death of the decedent," § 30-2485(b), applied to impose a 4-month statute of limitations commencing upon Pearl's death, he asserts that an application for fees from the trust filed on June 12, 2013, in the trust proceedings was sufficient to present his claim within that limitations period, see § 30-2485(b)(2). Marlys counters that the county court applied the correct statute of limitations, that an application filed in the trust proceedings could not operate to satisfy the statute of limitations for claims against the probate estate, and that the claim for predeath fees is therefore barred as untimely.

As we will explain in greater detail below, we conclude that Fogarty did not file a claim against the probate estate within any limitations period imposed by § 30-2485. Shortly

after Pearl's death in May 2013 he requested predeath fees and expenses from the *trust*, but he did not file a claim for those fees and expenses against the *probate* estate until July 14, 2016. As a result, he did not file any claim against the probate estate within 3 years of Pearl's death, and any such claim filed afterward was barred.

### (a) Standard of Review

[1-4] We first address the standard of review. Generally, appeals of matters arising under the Nebraska Probate Code, Neb. Rev. Stat. §§ 30-2201 through 30-2902 (Reissue 2016, Cum. Supp. 2018 & Supp. 2019), are reviewed for error on the record. *In re Estate of Hutton*, 306 Neb. 579, 946 N.W.2d 669 (2020). But we apply a different standard of review to appeals regarding claims against the probate estate. An appeal from the county court's allowance or disallowance of a claim in probate will be heard as an appeal from an action at law. *In re Estate of Karmazin*, 299 Neb. 315, 908 N.W.2d 381 (2018). In reviewing a judgment of the probate court in a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. *Id.* The probate court's factual findings have the effect of a verdict and will not be set aside unless clearly erroneous. *Id.* On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Id.* Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court. *In re Estate of Hutton, supra.*

### (b) Applicable Statute of Limitations

Through the years, the litigation involving Pearl has included both probate proceedings and trust proceedings. Our law recognizes probate proceedings and trust proceedings as separate spheres of jurisdiction, see *In re Estate of Chrisp*, 276 Neb. 966, 759 N.W.2d 87 (2009), and this appeal arises solely

from probate proceedings in which the probate of the 2005 pourover will was at issue. Where probate of a will is at issue in probate proceedings, devolution of the decedent's property devised by the will, subject to, among other things, the rights of creditors, is controlled by the Nebraska Probate Code. See §§ 30-2201 and 30-2401.

[5] Under our probate code, creditors' claims in probate proceedings must be presented within the time limitations set forth in § 30-2485, also called the nonclaim statute. It states, in part:

(a) All claims against a decedent's estate which arose before the death of the decedent, . . . whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis, if not barred earlier by other statute of limitations, are barred against the estate, the personal representative, and the heirs and devisees of the decedent, unless presented as follows:

(1) Within two months after the date of the first publication of notice to creditors if notice is given in compliance with sections 25-520.01 and 30-2483 . . . ;

(2) Within three years after the decedent's death if notice to creditors has not been given in compliance with sections 25-520.01 and 30-2483.

(b) All claims . . . against a decedent's estate which arise at or after the death of the decedent . . . are barred . . . unless presented as follows:

. . . .

(2) Any . . . claim [other than one based on a contract with the personal representative], within four months after it arises.

§ 30-2485. The requirements of § 30-2485 are mandatory, and where a claim is not filed within the time provided in the statute, it is barred. *In re Estate of Masopust*, 232 Neb. 936, 443 N.W.2d 274 (1989); *J. J. Schaefer Livestock Hauling v. Gretna St. Bank*, 229 Neb. 580, 428 N.W.2d 185 (1988).

Fogarty's argument that he is entitled to fees for his services for Pearl personally is limited to services he performed before Pearl died. Based on our reading of § 30-2485 and the facts of this case, we conclude that the 3-year limitations period in § 30-2485(a)(2) controlled any claim by Fogarty for predeath fees and expenses against Pearl's estate in the probate proceedings. Section 30-2485(a) applies to claims against the decedent's estate that "arose before the death of the decedent," regardless of whether those fees were "due or to become due." Pearl retained Fogarty for the legal work he performed before she died. Fogarty billed Pearl while she lived. Even though the fees remained outstanding upon Pearl's death, Pearl's indebtedness to Fogarty for predeath fees arose during her lifetime. And there is no evidence in the record that notice to creditors was given as described in § 30-2485(a)(2).

Fogarty apparently accepts that his claim for predeath fees and expenses is governed by the nonclaim statute, but he seems to believe that it "ar[ose] at or after" Pearl's death, see § 30-2485(b), such that § 30-2485(b)(2) applied, imposing a 4-month limitations period following Pearl's death. We do not understand how fees Fogarty seeks for representing Pearl personally during her life can be said to arise at or after her death. In the end, however, it does not matter, because Fogarty did not properly present a claim against Pearl's estate for predeath fees and expenses within 3 years of Pearl's death as required by § 30-2485(a)(2), much less within 4 months as required by § 30-2485(b)(2).

### (c) Presenting Claim Against Decedent's Estate

Nebraska has authorized only two methods of presenting "claims against a decedent's estate" to satisfy the limitations period in § 30-2485—(1) filing a timely "written statement of the claim . . . with the clerk of the court," pursuant to § 30-2486(1), or (2) commencing a proceeding against the personal representative "in any court which has subject matter jurisdiction and [where] the personal representative may

be subjected to jurisdiction," pursuant to § 30-2486(2). See *Lenners v. St. Paul Fire & Marine Ins. Co.*, 18 Neb. App. 772, 793 N.W.2d 357 (2010). Here, Fogarty has not filed a proceeding against the personal representative. His recovery of predeath fees and expenses depends on whether he timely filed a written statement of the claim. The only written request for predeath fees and expenses that Fogarty made within 3 years of Pearl's death was the application he made in the trust proceedings on June 12, 2013. Fogarty claims that this was a proper presentation of the claim for purposes of the nonclaim statute. For the reasons below, we conclude that this application did not present a claim against Pearl's estate for the purposes of §§ 30-2485 and 30-2486.

We first look at the nature of Fogarty's June 12, 2013, application. To be a claim against the decedent's estate, we have required "a demand . . . upon the estate for satisfaction of [an] obligation." *In re Estate of Feuerhelm*, 215 Neb. 872, 875, 341 N.W.2d 342, 345 (1983). Here, it is clear that Fogarty made a demand on Pearl's trust assets, not her probate estate. The application requested payment of fees and costs for services incurred during Pearl's lifetime "if it be within the authority of the Pearl R. Giventer [Revocable] Trust to do so." Further demonstrating that Fogarty sought fees from the trust rather than from the probate estate is the fact that his application was filed in the trust proceedings. The question becomes whether a demand against the trust assets is a claim against the decedent's estate for the purposes of §§ 30-2485 and 30-2486. We conclude that it is not.

We read the language of §§ 30-2485 and 30-2486 to require claims to be timely filed against the probate estate. Both sections are part of the Nebraska Probate Code and apply to "claims against the decedent's estate." In *In re Estate of Chrisp*, 276 Neb. 966, 975, 759 N.W.2d 87, 95 (2009), we read references to "'estate'" in our probate code to include only the "'probate estate.'" In doing so, we recognized that the definition of "[e]state" for purposes of the probate code

includes "the property of the decedent, *trust*, or other person whose affairs are subject to the Nebraska Probate Code." See § 30-2209(12) (emphasis supplied). We interpreted the reference to "trust" in the definition of "estate" to refer to certain limited circumstances in which courts in probate proceedings are authorized to exercise jurisdiction over trusts, but specifically rejected the notion that administration of a probate estate necessarily includes trust property in which the decedent had an interest. Indeed, as referenced above, we held that a county court does not have jurisdiction in a probate proceeding to consider a petition against a trust to determine whether the trust is liable for, among other things, claims against the probate estate. See, § 30-3850(a)(3); *In re Estate of Chrisp, supra*. See, also, *In re Estate of George*, 265 P.3d 222 (Wyo. 2011) (probate court did not have jurisdiction over trust, and creditor could not bootstrap rejection of claim against probate estate into right to file claim against trust, where limitations period for filing claim against trust had expired).

Drawing this distinction between demands against the probate estate and those against the trust is in harmony with other provisions of our probate code. Section 30-2401, cited above, indicates that probate procedures relating to the rights of creditors apply only to property that passes through the decedent's probate estate:

> The power of a person to leave property by will, and the rights of creditors, . . . are subject to the restrictions and limitations contained in this code to facilitate the prompt settlement of estates. Upon the death of a person, his real and personal property devolves to the persons to whom it is devised by his last will . . . subject . . . to rights of creditors . . . .

If property of the probate estate is distributed before payment of creditors whose claims are not barred, those creditors may pursue their claims against the distributees, not nonprobate transferees such as trust beneficiaries. See § 30-2404. In fact, all proceedings and actions to enforce creditors' claims against

the decedent's estate are governed by the procedure in the probate code, with the intention of forcing creditors initially to engage in the probate process. *Id.* See, also, Unif. Probate Code § 3-104, 8 (part II) U.L.A. 31 (2013) (process for making claims against decedent's estate designed to force decedents' creditors to assert their claims against duly appointed personal representatives). See, also, *In re Estate of Chrisp, supra* (nontestamentary trust is not subject to procedures for administration of decedent's estate); *In re Estate of Rosso*, 270 Neb. 323, 701 N.W.2d 355 (2005) (personal representative's duty to settle and distribute estate does not extend to nontestamentary assets that do not lawfully belong to estate).

Requiring Fogarty to ask the probate estate, rather than the trust estate, for predeath fees and expenses to satisfy the limitations period is also consistent with the purposes of the nonclaim statute. The purpose of § 30-2485 is to facilitate and expedite proceedings to distribute a decedent's estate, including an early appraisal of the respective rights of interested persons, which include creditors, and prompt settlement of demands against the estate. See, § 30-2209(21); *In re Estate of Feuerhelm*, 215 Neb. 872, 341 N.W.2d 342 (1983). As a result, the probate court or the personal representative can readily ascertain the nature and extent of a decedent's debts, determine whether any sale of property is necessary to satisfy the decedent's debts, and project a probable time at which the decedent's estate will be ready for distribution. *Id.* Once this process is complete, a creditor of the probate estate may eventually recover from the decedent's revocable trust, if one exists. See § 30-3850(a)(3) ("[a]fter the death of a settlor, and subject to the settlor's right to direct the source from which liabilities will be paid, the property of a trust that was revocable at the settlor's death is subject to claims of the settlor's creditors, . . . to the extent the settlor's probate estate is inadequate to satisfy those claims . . ."). See, also, *In re Estate of Chrisp*, 276 Neb. 966, 759 N.W.2d 87 (2009) (personal representative has no interest in decedent's validly created

nontestamentary trust except to assert trust's liability for specified claims against probate estate and statutory allowances that probate estate cannot satisfy). But because Fogarty did not file a timely claim against the probate estate, his entitlement to predeath fees and expenses from the probate estate was not under consideration.

Fogarty suggests that his filing against the trust estate in the trust proceedings satisfied the nonclaim statute because Paul, Marlys, Wells Fargo, and Teichman all had notice of the filing and consequently of his claim. But we have held that mere notice to a representative of an estate regarding a possible demand or claim against the estate does not constitute presenting or filing a claim under § 30-2486. See, *J.R. Simplot Co. v. Jelinek*, 275 Neb. 548, 748 N.W.2d 17 (2008); *In re Estate of Feuerhelm, supra*. "If notice were accorded the stature of a claim, the resultant state of flux and uncertainty would frustrate and avoid the purpose and objectives of the nonclaim statute." *In re Estate of Feuerhelm*, 215 Neb. at 875, 341 N.W.2d at 345.

Lastly, Fogarty seems to submit that his claim was preserved because, as he contends, he was entitled to payment from the trust estate. He asserts that his method of seeking payment of predeath fees and expenses from the trust assets conformed to the terms of Pearl's trust, which allowed the trustee, under certain circumstances, to pay "claims against the Settlor's estate" directly to the creditor or through the personal representative of the estate. Moreover, Fogarty implies that the trust is liable for his claims against Pearl's estate pursuant to § 30-3850(a)(3). But the liability of Pearl's trust is not an issue before us. As we have already noted, this appeal arises from the probate proceedings involving Pearl's estate, not the trust proceedings. In the context of the probate proceedings, the county court did not have jurisdiction to rule on whether Fogarty could receive predeath fees and expenses from the trust, and consequently, neither do we. See *In re Estate of Chrisp, supra*.

For the reasons articulated above, the county court did not err in denying as time barred Fogarty's request for the fees and expenses he incurred before Pearl died.

## 2. Fees Incurred After Pearl's Death

Fogarty and Teichman next argue that they were entitled to fees and expenses incurred after Pearl's death and that the county court erred by not ordering that any of their fees and expenses be paid. They base this claim for fees and expenses on the attempt by Teichman as the nominated personal representative and Fogarty serving as his attorney to revive the appeal in cases Nos. A-11-806 and A-11-974 and to probate the 2012 will. Section 30-2481 governs this matter and provides, "If any personal representative or person nominated as personal representative defends or prosecutes any proceeding in good faith, whether successful or not he is entitled to receive from the estate his necessary expenses and disbursements including reasonable attorneys' fees incurred." We have held that a person seeking to recover fees under § 30-2481 "must first establish good faith, and then prove (1) that the claimed expenses and disbursements were necessary and (2) that the attorney fees were necessary and reasonable." *In re Estate of Odineal*, 220 Neb. 168, 169, 368 N.W.2d 800, 801 (1985). Before turning to Fogarty and Teichman's arguments, however, we again review the governing standard of review.

### (a) Standard of Review

As we have already discussed, appeals of matters arising under the Nebraska Probate Code are reviewed for error on the record. *In re Estate of Hutton*, 306 Neb. 579, 946 N.W.2d 669 (2020). When reviewing a judgment for errors on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.* Fogarty and Teichman's claim for fees and expenses for actions taken after Pearl's death, however, is made under §§ 30-2481 and 30-2482. We have said that ordinarily, the fixing of reasonable compensation,

fees, and expenses, pursuant to these sections, is within the sound discretion of the county court. See *In re Estate of Odineal, supra*.

Our prior cases demonstrate that both of these standards of review—errors on the record and abuse of discretion—can come into play when compensation is sought under these sections. While the fixing, i.e., the determination of the amount, of reasonable compensation, fees, and expenses will ordinarily be reviewed for abuse of discretion, we have reviewed determinations antecedent to the fixing of the amount of reasonable compensation, fees, and expenses under an errors on the record standard. For example, in *In re Estate of Watkins*, 243 Neb. 583, 501 N.W.2d 292 (1993), we affirmed a county court's award of compensation to a personal representative and his lawyer after finding that the county court's determination that the personal representative acted in good faith was supported by evidence. Similarly, in *In re Estate of Reimer*, 229 Neb. 406, 427 N.W.2d 293 (1988), we affirmed a county court's award of compensation to a nominated personal representative and his attorney after finding that competent evidence supported the county court's determination that the nominated personal representative's effort to probate a will were done in good faith. We will proceed in the same manner here.

### (b) County Court's Reasons for Denying Compensation

Fogarty and Teichman argue that the reasons provided by the county court for denying them compensation under § 30-2481 were legally erroneous. Although the county court's 2020 order in which it modified its reasons for denying the fee request filed by Fogarty and Teichman is not perfectly clear to us in all respects, we understand it to have denied compensation for essentially three reasons: (1) Teichman was merely nominated as a personal representative in the 2012 will, but did not actually serve in that capacity; (2) there were insufficient funds in the probate estate to compensate Fogarty and Teichman;

and (3) the services Fogarty and Teichman provided in attempting to probate the 2012 will were not "necessary" for purposes of § 30-2481 because the 2012 will was unenforceable. As we explain below, we agree with Fogarty and Teichman that the county court committed errors of law by relying on each of these reasons.

To the extent the county court denied fees because Teichman was merely a nominated personal representative and did not actually serve as personal representative, that was an error of law. It bears repeating that § 30-2481, the statute under which Fogarty and Teichman sought compensation, provides, "If any personal representative *or person nominated as personal representative* defends or prosecutes any proceeding in good faith, *whether successful or not* he is entitled to receive from the estate his necessary expenses and disbursements including reasonable attorneys' fees incurred." (Emphasis supplied.) Section 30-2481 expressly provides that a person that is merely nominated as a personal representative may receive from the estate necessary expenses and disbursements if he or she defends or prosecutes a proceeding in good faith, whether that effort is successful or not. The fact that Teichman was merely nominated as personal representative under the 2012 will was not a legally viable reason to deny Fogarty and Teichman's claim for fees. See *In re Estate of Reimer, supra*.

We find that the county court also committed an error of law when it found that Fogarty and Teichman were not entitled to compensation under § 30-2481 on the grounds that there were insufficient funds in the probate estate. Assuming the funds in the probate estate were, in fact, inadequate to pay the compensation Fogarty and Teichman sought, the statute did not authorize the county court to deny the claim for that reason. Fogarty and Teichman sought a determination of the fees and expenses, that is, administration expenses, to which they were entitled under § 30-2481. See *In re Estate of Reimer, supra*. If a probate estate is inadequate to pay a creditor's claims, costs of administration, or certain other expenses, a mechanism

exists for those entitled to funds from the probate estate to pursue property that the decedent placed in a revocable trust that was revocable at his or her death. See § 30-3850(a)(3). Even if there were inadequate funds in the probate estate to compensate Fogarty and Teichman, the county court was still obligated to determine what they were entitled to receive.

The county court seems to have concluded that Fogarty and Teichman did not comply with the procedural requirements of § 30-3850(a)(3) and thus could not have had any entitlement to compensation satisfied from the trust. The county court had no authority, however, to make such a determination in the probate proceeding. As we have already said, we have expressly held that a county court does not have jurisdiction in a probate proceeding to consider a petition against a trust under § 30-3850(a)(3). See *In re Estate of Chrisp*, 276 Neb. 966, 759 N.W.2d 87 (2009). Any failure on the part of Fogarty and Teichman to comply with the procedural requirements of § 30-3850(a)(3) could be considered only in the trust proceeding.

This leaves the county court's conclusion that none of the services Fogarty and Teichman provided were "necessary" under § 30-2481, because the 2012 will was unenforceable. Here, the county court appears to have concluded that the services provided were not necessary either because the 2012 will was unenforceable or because Fogarty and Teichman should have known that the 2012 will was unenforceable. We find either determination to be legally erroneous.

[6] As discussed above, a nominated personal representative and his or her attorney cannot be denied compensation for their services under § 30-2481 on the grounds that they were unsuccessful in defending or prosecuting a proceeding. The statute expressly provides that when a personal representative or person nominated as a personal representative defends or prosecutes any proceeding in good faith, "*whether successful or not*," he or she is entitled to receive from the estate his or her necessary expenses including reasonable attorneys' fees.

§ 30-2481 (emphasis supplied). If litigation efforts pursued by a personal representative and his or her attorney could be deemed not "necessary" under § 30-2481 simply because they were unsuccessful, the language providing that the personal representative or nominated personal representative is entitled to receive funds from the estate "whether successful or not" would be read out of the statute. It is not within the province of the courts to read a meaning into a statute that is not there or to read anything direct and plain out of the statute. *Seivert v. Alli*, 309 Neb. 246, 959 N.W.2d 777 (2021). The mere fact that the 2012 will was found to be unenforceable was not, in itself, a legally valid basis to deny Teichman's claim for fees and expenses.

We also believe the county court committed an error of law to the extent it concluded that because Fogarty and Teichman *should have known* that the 2012 will was unenforceable, the services provided were not "necessary" under § 30-2481. As we have emphasized, that statute provides that a personal representative or nominated personal representative is entitled to receive from the estate "necessary expenses and disbursements including reasonable attorneys' fees incurred" for defending or prosecuting a proceeding in good faith. § 30-2481. We have previously interpreted "good faith" in § 30-2481 to refer to "honesty in fact concerning conduct or a transaction" and clarified that a person can act in good faith despite "mere negligence or an honest mistake." *In re Estate of Watkins*, 243 Neb. 583, 590, 501 N.W.2d 292, 296 (1993).

In our view, the language of § 30-2481 is most sensibly understood as providing that if a personal representative or nominated personal representative prosecutes or defends a proceeding in good faith, he or she is entitled to receive compensation from the estate for those expenses and disbursements that were reasonably needed to defend or prosecute that proceeding. As we understand it, the word "necessary" limits the expenses that can be recovered to those that were required to pursue the litigation position in the proceeding at issue.

We see no basis to conclude that it allows the county court to deny fees because it finds that the personal representative or nominated personal representative who prosecuted or defended proceedings in good faith should have known that the litigation position it took lacked merit.

We find confirmation in this understanding of § 30-2481 by comparing it to similar statutes from other states. Section 30-2481 mirrors Unif. Probate Code § 3-720, 8 (part II) U.L.A. 228 (2013). Many other states have enacted statutes that are very similar to this provision of the Uniform Probate Code, but with a key addition. Maryland, to take one illustrative example, has a statute that provides, "A personal representative or person nominated as personal representative who defends or prosecutes a proceeding in good faith *and with just cause* shall be entitled to receive necessary expenses and disbursements from the estate regardless of the outcome of the proceeding." Md. Code Ann., Est. & Trusts § 7-603 (West 2019) (emphasis supplied). Several other states have similar statutes that also make a personal representative's or nominated personal representative's right to compensation from the estate for prosecuting or defending proceedings regarding a will depend on a showing that he or she pursued the proceedings in good faith and with just cause. See, e.g., Iowa Code § 633.315 (2021); Kan. Stat. Ann. § 59-1504 (2021).

[7] Those states that have added a "just cause" provision to their statutes similar to § 30-2481 have, by that addition, authorized courts to deny compensation to a personal representative or nominated personal representative who should have known that he or she was pursuing a litigation position that lacked merit. In contrast to these statutes, § 30-2481 does not include a reference to "just cause" or any similar concept. Under § 30-2481, a personal representative or nominated personal representative is entitled to receive compensation if he or she prosecutes or defends a proceeding in good faith. The intent of the Legislature is expressed by omission as well as by inclusion. *Nelssen v. Ritchie*, 304 Neb. 346, 934 N.W.2d 377

(2019). While perhaps a policy argument could be made that a personal representative or nominated personal representative should not be able to recover expenses incurred in pursuit of a litigation position that he or she should know is meritless, we find our Legislature, unlike that of some other states, has not adopted such a policy.

To be clear, it is not our view that the objective merits of a legal position taken by a personal representative or nominated personal representative could never be relevant to a determination of whether he or she, in the words of § 30-2481, "defend[ed] or prosecute[d] [a] proceeding in good faith." While we have interpreted "good faith" in the context of § 30-2481 to refer to the subjective mindset of the personal representative or nominated personal representative, see *In re Estate of Watkins*, 243 Neb. 583, 501 N.W.2d 292 (1993), we believe the objective merits of a legal position could be relevant to whether a person pursued it with an honest belief in its validity. See, e.g., *Enders v. Parker*, 66 P.3d 11, 17 (Alaska 2003) (concluding that in making findings concerning good faith under statute similar to § 30-2481, court should consider whether nominated personal representative had "reasonably arguable grounds" to challenge will). In this case, however, the county court did not find that the lack of a reasonable basis to contend that the 2012 will was enforceable was merely evidence of the absence of good faith; it found that because Fogarty and Teichman should have known the 2012 will was unenforceable, they were not entitled to compensation. As we have explained, this was legally erroneous.

### (c) Marlys' Arguments for Affirmance

We have said very little to this point about Marlys' arguments regarding the county court's denial of Fogarty and Teichman's claim for fees and expenses incurred after Pearl's death. That is because, for the most part, Marlys does not argue that the county court's reasons for denying their claim were correct. Instead, Marlys argues that the county court's decision should be affirmed for other reasons.

Marlys' arguments for affirming the county court's denial of the claim for fees and expenses Fogarty and Teichman incurred after Pearl's death fall into several categories. She argues that they should not receive compensation because their efforts did not benefit the estate. She argues they should not receive compensation because Fogarty pursued his own interest, sought to punish Paul, and violated his duties as an attorney and because Fogarty and Teichman disfavored the true beneficiaries and violated their duty to the estate. Finally, she argues that certain efforts undertaken by Fogarty and Teichman were not necessary. As we will explain, we disagree with Marlys that we can affirm the county court's order on any of these bases.

We begin by addressing Marlys' argument that we should affirm the county court's order on the grounds that the efforts of Fogarty and Teichman did not benefit the estate. In *In re Estate of Watkins*, we rejected an argument that county courts could consider "'benefit to the estate' as a judicially fashioned criterion to determine whether a personal representative may receive compensation for services rendered." 243 Neb. at 588, 501 N.W.2d at 296. We observed that a personal representative's or nominated personal representative's entitlement to compensation was controlled by statute and that those statutes contained no requirement that the services be a benefit to the estate.

Marlys argues, without referencing our decision in *In re Estate of Watkins*, that if the efforts of a personal representative or nominated personal representative do not benefit the estate, he or she is not entitled to compensation. For support, she relies on *In re Estate of Odineal*, 220 Neb. 168, 368 N.W.2d 800 (1985), contending that in that case, we affirmed a county court's denial of compensation to a personal representative because he was pursuing his own interests rather than those of the estate. Although we found that the county court did not err in denying compensation in that case, we did so after finding that the county court did not err in concluding the personal representative did not act in good faith. We reject Marlys'

argument that a court can deny a claim for fees and expenses filed under § 30-2481 merely because the efforts of the personal representative or nominated personal representative were not a benefit to the estate.

In her next category of arguments, Marlys contends that the county court order should be affirmed because Fogarty and Teichman, particularly Fogarty, were attempting to probate the 2012 will, not because they believed it was enforceable, but because they wanted to increase their own compensation and punish Paul. As just mentioned above, we held in *In re Estate of Odineal* that the county court did not err by finding that a nominated personal representative who pursued legal action solely to generate a fee—and therefore did not act in good faith—was not entitled to compensation under § 30-2481. Although the absence of good faith is a basis upon which a court could deny compensation to a nominated personal representative who prosecuted or defended legal proceedings, it is not, given the county court's findings, a basis upon which we could affirm in this case.

[8] An argument could be made that the county court affirmatively found in this case that Fogarty and Teichman did act in good faith. In its 2020 order, the county court stated that it "did not rule that Fogarty and Teichman acted in bad faith as the evidence was insufficient to prove the same" and that Fogarty and Teichman "believed [that] they had a duty to pursue the [2012] will and that they proceeded in good faith." If the county court had affirmatively rejected Marlys' contention that Fogarty and Teichman did not act in good faith, we could not consider an argument by Marlys that such a determination was erroneous. An appellee's argument that a lower court's decision should be upheld on grounds specifically rejected below constitutes a request for affirmative relief, and the appellee must cross-appeal in order for that argument to be considered. *Weber v. Gas 'N Shop*, 278 Neb. 49, 767 N.W.2d 746 (2009). Marlys did not file a cross-appeal in this case.

Although certain language in the county court's 2020 order might be read to suggest the county court found that Fogarty and Teichman acted in good faith, we ultimately conclude that it did not reach that issue. The county court did not expressly state that it found Fogarty and Teichman acted in good faith for purposes of § 30-2481, and it was not necessary for the county court to make such a determination, because it denied compensation for other reasons. But even though we find that the county court did not reach the question of whether Fogarty and Teichman acted in good faith, it would not be appropriate for this appellate court, in reviewing the county court's decision for error appearing on the record, to make a factual finding about whether Fogarty and Teichman acted in good faith before the county court has passed on the question. See *Weber v. Gas 'N Shop, supra*. That is a determination that must be made by the county court on remand. See *Darling Ingredients v. City of Bellevue*, 309 Neb. 338, 960 N.W.2d 284 (2021).

Finally, Marlys argues that we should affirm the county court's order denying compensation to Fogarty and Teichman because various actions they took were not necessary. We have explained above that we do not understand § 30-2481 to allow the county court to find that fees and expenses were not necessary because they were incurred in litigation efforts that were unsuccessful or in litigation efforts that the personal representative or nominated personal representative should have known would be unsuccessful. A personal representative or nominated personal representative could, however, prosecute or defend proceedings in good faith and still seek compensation for actions that were not necessary to that effort. The county court's 2020 order alluded to its concern that certain actions undertaken by Fogarty and Teichman were not necessary to probating the 2012 will. The county court has not, however, made a determination as to the necessity of the claimed expenses, and, as with the determination of whether Fogarty and Teichman acted in good faith, it would not be appropriate for this court to make that determination in the first instance.

That too is a determination that must be made, if necessary, by the county court on remand. See *Darling Ingredients, supra*.

### (d) Summary

To summarize our conclusions regarding the county court's denial of compensation for Fogarty and Teichman's activities after Pearl's death, we find that the county court's reasons for denying compensation were legally erroneous. Additionally, we find that while there may be other reasons to deny Fogarty and Teichman's claim for fees and expenses incurred after Pearl's death either in whole or in part, it would not be appropriate for this court to determine whether it would be appropriate to do so in the first instance. Accordingly, we reverse the county court's denial of compensation to Fogarty and Teichman for actions taken after Pearl's death and remand the cause for the county court to determine, in light of this opinion and on the existing record, whether and to what extent Fogarty and Teichman are entitled to compensation for those actions.

### 3. Remaining Requests for Relief

In addition to their challenges to the county court's order regarding fees and expenses, Fogarty and Teichman assign that the county court erred in not declaring that "all claims of Paul and Marlys[] (a) are without merit" and "(b) are res judicata and/or claim precluded against [Fogarty] and [Teichman] by them or any person in privity with them." (Emphasis omitted.) They ask that we issue a declaration stating that all "ad homine[m] slanders" in claims and defenses by Paul and Marlys are without merit and precluding all claims or theories that Paul, Marlys, and anyone in privity with them may have against Fogarty and Teichman. Brief for appellants at 36 (emphasis omitted).

Even if this court could extend the affirmative relief Fogarty and Teichman request, we cannot discern a meaningful legal argument in their brief as to why it would be justified. Fogarty and Teichman allude to the doctrine of claim preclusion, but they do not explain how it applies in this particular case.

Consequently, they have made no showing that the relief they seek is warranted.

## V. CONCLUSION

We reverse the county court's denial of compensation for Fogarty's and Teichman's activities after Pearl's death and remand the cause for the county court to determine, on the existing record, whether and to what extent they are entitled to their fees and expenses during that period. We otherwise affirm.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.